IN RE the MARRIAGE OF:

Scott R. WILKE, Petitioner-Appellant,

v.

Judith A. WILKE, Respondent-Respondent.

Court of Appeals

*No. 96–0767. Submitted on briefs May 6, 1997.—Decided July 8, 1997.*

(Also reported in 569 N.W.2d 296.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Barbara J. Stippich* and *Richard J. Podell* of *Richard J. Podell & Associates, S.C.* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Gregg M. Herman* and *Matthew J. Price* of *Loeb & Herman, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J.    Scott R. Wilke appeals from a postdivorce judgment order denying his right to exercise an option to purchase corporate stock alleged to exist in a stock restriction agreement affecting shares of stock awarded to his wife as part of a marital property division. Because Wilke waived or surrendered his rights to exercise said option as indicated within the Marital Settlement Agreement, we affirm.

## I.  BACKGROUND

On December 19, 1994, a trial court granted Scott R. Wilke and Judith A. Wilke a judgment of divorce. The parties executed a Marital Settlement Agreement which was approved by the court and incorporated in the judgment of divorce. The division of marital property was set forth in the agreement. Included in the agreement were 22 1/2 shares of Leader Cards, Inc.

stock granted to Judith as part of the property division. Scott moved the trial court for an order enabling him to exercise an option to purchase Judith's shares, a right which he claimed by virtue of a Leader Cards, Inc. corporate restrictive stock agreement.[1] The trial court denied the motion, concluding that because the Marital Settlement Agreement included a mutual release provision whereby each party surrendered any interest each spouse may have in any property awarded to the other, Scott had waived or surrendered his option to purchase under the Stock Restriction Agreement. Scott now appeals.

## II.  ANALYSIS

This appeal addresses the effect a clause of mutual release contained in the marital property agreement executed by Scott and Judith as part of their judgment of divorce has on the restrictive stock agreement of the Leader Cards corporation to which the shares granted to Judith are subject. Insofar as both documents constitute contracts, their respective construction is a legal question reviewed independently of the trial court's determination. *Gardner v. Gardner*, 190 Wis. 2d 216, 229, 527 N.W.2d 701, 705 (Ct. App. 1994). The determination of whether the language ·of a contract is ambiguous is similarly a question of law which we review independently. *Old Tuckaway Assoc., Ltd. v. City of Greenfield*, 180 Wis. 2d 254, 280, 509 N.W.2d

---

[1] Scott moved before the assistant family court commissioner to compel Judith to sell her 22 1/2 shares at the "contract price" as calculated in the Leader Cards, Inc. Stock Restriction Agreement. The assistant commissioner certified the motion to the circuit court which, after extensive briefing and argument, denied the motion.

323, 332 (Ct. App. 1993). If the language of the contract is unambiguous it must be enforced as written. *Id.* We deem the relevant language in both documents unambiguous.

The Leader Cards, Inc. Stock Restriction Agreement was executed on December 27, 1991, between the corporation and its then sole stockholder, Ralph R. Wilke, as part of an estate plan. It is undisputed that soon thereafter, on December 30, 1991, in furtherance of the plan, 45 shares of stock were transferred to Judith who, on the same date, transferred the same shares to Scott. During the divorce proceedings, the parties agreed that these shares were marital property subject to division upon divorce as reflected above.

The stock agreement itself reflects the purpose that it was in the best interests of the stockholders to restrict the transfer of the common stock held by the stockholders and provide for its redemption and repurchase under certain circumstances by a prescribed procedure. The first paragraph of the agreement provides for a broad restriction and reads:

1.   Restricted Transfers.

(a)   Restriction. No Stockholder shall sell, give, assign, transfer or in any manner dispose of or encumber or permit to be sold, assigned, encumbered, attached or otherwise disposed of or transferred in any manner, either voluntarily or by operation of law (all hereinafter collectively referred to as "Transfer") any or all of the shares of the Common Stock of the Corporation, or any interest therein, which may now be owned or hereafter be acquired by such Stockholder (hereinafter called "Shares") *except in compliance with the terms of this Agreement.* (Emphasis added.)

The balance of the first section treats voluntary and involuntary transfers, permitted transfers of stock and the right of first refusal by the corporation and the other stockholders, the viability of the restrictions and the effect of any attempted transfer in violation of the agreement. The second section of the agreement relates to the corporation's option to redeem shares from the estate of any deceased shareholder, and the third section sets forth a procedure to pledge or encumber shares.

Section 4 deals with marital property and is divided into two parts: (a) *Effect of Death of Spouse of Stockholder* and, as is relevant to our inquiry, (b) *Effect of Divorce*. The latter provision states:

> In the event of the termination of the marriage of a Stockholder by divorce, dissolution or legal separation, if the spouse of said Stockholder is determined to have a marital, community or other property interest in the Shares registered in the name of said Stockholder and the interest of the spouse of said Stockholder in the Shares is not received by said Stockholder in accordance with the property settlement agreement, if any, or pursuant to the decree of divorce, dissolution or legal separation, then said Stockholder shall have the option to purchase, and the spouse of said Stockholder shall sell, if such option is exercised, all (but not less than all) of the spouse's marital, community or other property interest in the Shares registered in the name of said Stockholder. Such option shall be exercised by said Stockholder giving the spouse written notice within six (6) months after the date of the entry of the decree of divorce, dissolution or legal separation that the Stockholder has elected to exercise the option to purchase pursuant to this Section 4(b). Such exercise, once exercised, may not be revoked

except with the written consent of the spouse. The purchase price for the interest in the Shares purchased pursuant to this Section 4(b) shall be the Contract Price, determined in the manner provided in Section 5 hereof and upon the payment terms described in Section 6 hereof.

To notify all stockholders of these restrictions, on the back of each issued stock certificate is embossed the following legend:

> Any sale, assignment, transfer, pledge or other disposition of the shares of stock represented by this Certificate is restricted by and subject to the terms of a Stock Restriction Agreement dated December 27, 1991, and upon proof of compliance therewith. A copy of said Agreement is on file with the Secretary of the Corporation. By acceptance of this certificate, the holder hereof agrees to be bound by the terms of said Agreement.

The basis of the trial court's decision denying Scott's motion was paragraph 18 of the parties' marital property agreement which reads:

> Except as otherwise herein specifically provided, each party gives up in accordance with the provisions of sec. 861.07, Stats., all right in the property awarded to the other herein. All property received by the parties pursuant to this agreement shall be the separate property of the respective parties, free and clear of any right, interest or claim of the other party, and each party shall have the right to deal with and dispose of his or her separate property as fully as if the parties had never been married. Each party accepts the provisions herein in full satisfaction of all property rights and all obligations arising out of the marital relationship of the parties. Each party releases the other of all claims of any kind.

276

With these documents before us, we now examine the bases of Scott's appeal. Scott claims the trial court erred in concluding that paragraph 18 of the Marital Settlement Agreement could extinguish restrictions attached to marital assets, i.e., corporate stock, and eliminate contractual obligations between one of the parties (Judith) and a non-party (Leader Cards, Inc.). He reasons that the result of the trial court's ruling is to negate a major objective of the Stock Restriction Agreement, to-wit: "that the stock revert to the corporation in the event of a divorce of a family shareholder." He also argues that the trial court had no authority to issue an order which had substantial impact on the interests of a non-party corporation and its rights under the stock agreement. Characterizing paragraph 18 as a "Probate Provision," thereby restricting the context of the paragraph, he asserts that use of the "mutual release" language contained in the paragraph to find waiver or surrender is unwarranted. We shall consider each of these assertions in turn.

Scott first argues that paragraph 18 of the Marital Settlement Agreement "has nothing to do with the disposition of an encumbered or restricted asset that a party received in property division at the time of divorce." He asserts that the paragraph was included only for the purpose of probate and estate planning. We do not agree.

Doubtless, the first sentence of paragraph 18 requires that each party surrender any right each might have in property covered by § 861.07, STATS.[2] There is no doubt that the provision was intended for

---

[2] Section 861.07, STATS., provides:

(1)  In this section:
    (a)  "Property derived or received from the decedent" includes but is not limited to the following:

probate and estate planning. The second sentence of the paragraph, however, is couched in broad terms of

1. Property held at the time of the decedent's death by the decedent and the surviving spouse with the right of survivorship.

2. Property appointed to or for the spouse by the decedent's exercise of a general or special power of appointment.

(b) "Property derived or received from the decedent" does not include property acquired by the surviving spouse under s. 861.02 (1).

(2) If there is an election of the augmented marital property estate by the surviving spouse under s. 861.03, the share elected shall be reduced by the value of the following property.

(a) Property of the decedent spouse transferred to or for the surviving spouse by will or under intestate succession.

(am) Property transferred to or for the surviving spouse at or because of the decedent's death, to the extent that the property was derived or received from the decedent by means other than testate or intestate succession without adequate consideration.

. . . .

(c) Property transferred by the surviving spouse to any person other than the decedent at any time during marriage, to the extent that the property was derived or received from the decedent without adequate consideration and to the extent that the property was transferred without the receipt of adequate consideration.

(2m) The amount of the reduction under sub. (2) shall be decreased by one-half the value of the property included in the reduction which is deferred marital property or which would have been deferred marital property if retained by the decedent, except property described in sub. (2r).

(2r) If property described under this section is a joint tenancy exclusively between spouses which is governed by ch. 700, one-half of the joint tenancy transfers to the donee spouse at the death of the decedent spouse and shall be valued as of that date.

(3) Property described under this section which is owned by the surviving spouse at the decedent's death, which is transferred to the surviving spouse at or because of the decedent's death or which is transferred to the surviving spouse by will or intestate succession is valued as of the date of the decedent's death. Property described under this section which has been transferred by the surviving spouse is valued at the time the transfer became irrevocable or at the decedent's death, whichever occurs first. The surviving spouse's beneficial interest in a trust, life estate, insur-

mutual release of all interests that each party may have in the other party's property. The trial court correctly identified the central issue of this dispute: i.e., what "effect is to be given the first two sentences of paragraph 18 in light of the restrictions that are in effect on this stock." No one disputes that the option that Scott possessed regardless of its source, was anything less than a claim against the 22 1/2 corporate shares.

If the language of paragraph 18 was intended solely for probate purposes, it could have been concluded after the first sentence, then its purpose would have been achieved. But this is not how the paragraph reads in it entirety. By its sweeping terms, it reasonably includes any claim against property, including property interests, that are encumbered because of its acquisition during a marriage. Thus, we find no support for Scott's claim that any waiver or release found in paragraph 18 is limited to a probate context.

As noted above, there is no dispute that the purpose of this Stock Restriction Agreement was to prevent the transfer or encumbrance of the Leader

ance policy, retirement plan, annuity or other arrangement described in this section is valued as follows:

(a) A mandatory income interest is valued in accordance with valuation tables used by the internal revenue service for estate tax purposes.

(b) A mandatory income interest together with a general testamentary power of appointment is valued at 100% of the trust.

(c) A lifetime unlimited power of withdrawal is valued at 100% of the property subject to the power.

(d) A discretionary or any other beneficial interest or power is valued at zero.

(4) For the purpose of this section, the surviving spouse has the burden of proving that property owned by him or her at the decedent's death or property transferred by him or her during the marriage was not derived or received from the decedent.

Cards corporation's stock to individuals or entities not permitted by the terms of the agreement. We recognize that clear intention. *Bruns v. Rennebohm Drug Stores, Inc.*, 151 Wis. 2d 88, 101, 442 N.W.2d 591, 596 (Ct. App. 1989). To conclude as Scott does, however, that the major objective of the agreement "that corporate stock revert to the corporation in the event of a divorce of a family shareholder" is a leap in logic unsupported by the documents of record.

The procedure to restrict unapproved transfers of stock or encumbrances is not uniform in the agreement, but varies depending upon the particular circumstances. First, if stock is transferred voluntarily or involuntarily to an unapproved transferee, the corporation has the right of first refusal to redeem the stock and other stockholders have the secondary right to purchase. Second, if an individual who was permitted to obtain stock later desires to transfer stock, the original transferor stockholder has the option to purchase. But if the option is not timely exercised, the corporation has the right to redeem, and other stockholders have the secondary right to purchase. Third, in the event of the death of a stockholder, the corporation has the first right to redeem, and other stockholders have the secondary right to purchase the stock that is not transferred to a permitted transferee. Fourth, if a stockholder desires to pledge or otherwise encumber his or her shares, he or she must obtain the permission of the corporation; otherwise the transaction is void. Nevertheless, if such an event occurs, the corporation has the first right to redeem the shares and other stockholders have the secondary right to purchase.

In the final circumstance, which is pertinent to this appeal, the procedure is quite different from the others. Section 4 of the restricted stock agreement,

entitled "Marital Property," provides that in the event of the divorce of a stockholder, where the stock is deemed marital property and the stockholder does not receive back the stock, the stockholder has the option to purchase the stock. It further requires that the spouse shall sell the stock if notified. This section does not provide for any secondary rights on behalf of the corporation should the first right to purchase not be timely exercised or refused.

A plain reading of Section 4, insofar as it relates to divorced shareholders, grants to the divorced shareholder the "option to purchase" all the marital interest in the corporation's shares registered in the name of the shareholder (here 22 1/2 shares) and if the shareholder exercises the option, the spouse must sell the interest. From this recitation, it is uncontrovertible that Scott alone had the "call" to purchase the marital interest in the corporation's shares. It ineluctably follows that he alone could choose to exercise or not exercise the purchase option. Thus, when Scott agreed to the mutual release contained in the second sentence of paragraph 18 of the Marital Settlement Agreement, he surrendered or waived his option to purchase the marital interest to which he was otherwise entitled.

Scott argues that to condone this result aborts the main purpose of the agreement. We are not persuaded. The main purpose of the agreement was to prevent, by definition, a nonpermitted person to become a shareholder in a closed family corporation. Judith was and is a permitted shareholder who was required to sell her stock interest if Scott had exercised his option. Her intentions were made manifest by the oral argument at the post-judgment motion hearing. She acknowledged and recognized that her interest in the 22 1/2 shares could not be sold to a nonpermitted transferee. In fact,

she planned no sale in contravention of the restrictions placed on her interest. Thus, the real purpose of the agreement has not been defeated because there will be no prohibited transferee.

Lastly, Scott argues that at the time of a divorce all marital property is divided between the parties. In many cases, some of the marital assets are encumbered by any variety of means: real estate mortgages, personal security liens, even stock restrictions. He reasons that even if by a marital settlement agreement each party surrenders an interest in the property awarded to the other party, no encumbrance or restriction attached to the property is extinguished. We agree that neither a court nor an agreement of the parties can unilaterally extinguish a non-party's interest. *See Torgerson v. Torgerson,* 128 Wis. 2d 465, 471, 383 N.W.2d 506, 509 (Ct. App. 1986). This, however, is not what has occurred in the instant case.

■

Scott's argument by analogy to the contrary does not stand on "all fours." First, the creator of the restriction, the corporation, was also the qualifier of the restriction. The corporation granted to Scott the power to exercise a buy-back option which was an encumbrance. Therefore, the right to buy back the shares of stock was solely Scott's, not the corporation's.[3] The corporation did not retain a right as in the other fact scenarios set forth in the agreement. Second, because of this grant to Scott, no right of the corporation was extinguished. The only right that was extinguished was Scott's right to exercise the buy-back option—a

---

[3] We summarily reject Scott's contention that the Stock Restriction Agreement named him as the corporate designee to buy back the shares at issue. There is nothing in the Stock Restriction Agreement to support this assertion.

right that Scott knowingly surrendered. Finally, as set forth above, because of the admitted limitations on Judith's right to sell the stock, the purpose of the agreement was not defeated.

For these reasons, we affirm the order of the trial court.

*By the Court.*—Order affirmed.