Jessica M. PLUEMER, a minor, by her Guardian ad
Litem, Stephen R. Buggs, Plaintiff-Respondent,

v.

Patricia PLUEMER, Defendant-Appellant.

Court of Appeals

*No. 2009AP155. Submitted on briefs April 8, 2009.*
*—Decided October 8, 2009.*

2009 WI App 170

(Also reported in 776 N.W.2d 261.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert L. Sudmeier* of *Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C.*, Dubuque, Iowa.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen R. Buggs*, Platteville.

Before Dykman, P.J., Lundsten and Bridge, JJ.

¶ 1. DYKMAN, P.J. Patricia Pluemer appeals from an order granting summary judgment to Jessica Pluemer in Jessica's action to recover life insurance proceeds paid to Patricia following the death of Gerald Pluemer, who was Patricia's husband and Jessica's father.[1] Patricia contends that the trial court erred in imposing a constructive trust over the insurance proceeds based on the marital settlement agreement between Gerald and Jessica's mother, Lisa, which required both parents to name Jessica as the beneficiary on their life insurance policies.[2] Patricia contends that she is entitled to the life insurance proceeds despite the marital settlement agreement because (1) she is a bona fide purchaser of the life insurance proceeds, and therefore her right to the proceeds is superior to Jessica's; and (2) the life insurance provision in the marital settlement agreement is not "support-related," and thus the court was prohibited from imposing a constructive trust over the insurance proceeds.

¶ 2. We conclude first that Patricia has not identified a legal requirement that life insurance provisions in divorce agreements must be "support-related" to allow courts to impose constructive trusts over life insurance proceeds. However, we also conclude that there are competing reasonable inferences from the undisputed facts as to whether Patricia is a bona fide purchaser of at least a portion of the life insurance proceeds, which goes to the material issue of whether Patricia's right to that portion of the proceeds supersedes Jessica's and therefore invalidates the constructive trust over that amount. Accordingly, we reverse

---

[1] Because some of the parties to this action share a surname, we will use first names for ease of reading.

[2] Gerald and Lisa were divorced in 1999.

142

and remand with instructions to deny both parties' motions for summary judgment and proceed to trial on the issue of whether Patricia is a bona fide purchaser of any of the insurance proceeds.

## *Background*

¶ 3. The following undisputed facts are taken from the parties' summary judgment submissions. The "life insurance" section of Gerald and Lisa's marital settlement agreement provided that "[e]ach party shall name the parties' daughter [Jessica] as primary beneficiary on his or her [life insurance] policy."[3]

¶ 4. Gerald married Patricia in 2004. At that time, Gerald was retired from his position at John Deere and co-owned a business called Night Hawk Security. Several months after Gerald and Patricia married, Night Hawk began to struggle financially. Because Night Hawk was not a profitable business, Patricia financially supported the family, including Jessica when she resided with Gerald and Patricia.[4]

¶ 5. In July 2006, Gerald asked Patricia to take out a second mortgage on her home in order to satisfy Night Hawk's debts. Patricia refused. In May 2007,

---

[3] The parties do not raise the potential consequences of the part of the life insurance section awarding each party the surrender value of his or her policy.

[4] Patricia testified in her deposition that Gerald had primary placement of Jessica, and that Jessica was with them for nine months out of the year. Jessica argues this statement is false, and points to Gerald and Lisa's divorce judgment, which stated that Gerald and Lisa had joint custody and joint placement of Jessica. The placement schedule attached to the divorce judgment, however, provided that during the school year, Jessica resided with Gerald during the week and spent three weekends a month with Lisa, with a reversed schedule during the summer months.

143

Gerald was diagnosed with cancer. Several months later, he again asked Patricia to take out a second mortgage to satisfy Night Hawk's outstanding debt. Patricia again refused. Gerald continued to demand that Patricia take out a second mortgage to satisfy Night Hawk's debts, and said to her: "You will have my life insurance. What more do you want?" Patricia expressed concern over whether she was actually named as the beneficiary on Gerald's life insurance policy, and Gerald insisted that she was. Nonetheless, Patricia asked Gerald to verify who was the named beneficiary on his policy. The next day, Gerald informed Patricia that she was not named as the beneficiary, but that he would change it. Patricia then agreed to take out a second mortgage on her house to pay Night Hawk's debts, and on July 5, 2007, she gave Badger State Bank a mortgage on her house in the amount of $32,117.11 in exchange for a loan, which was used to pay Night Hawk's debt with First National Bank. Patricia testified at her deposition that she gave a second mortgage on her home to satisfy Night Hawk's debt as consideration for being named the beneficiary of Gerald's life insurance policy, but that there was no written contract between Patricia and Gerald concerning this agreement. She also stated that she did not know of the insurance provision in Gerald's marital settlement agreement from his first marriage. On August 23, 2007, Gerald changed the beneficiary on his life insurance policy to Patricia.

¶ 6. Also on August 23, 2007, Gerald and Patricia signed a contract with Doug Bartow, Night Hawk Security's co-owner, and his wife. The contract stated that Doug Bartow and his wife would obtain a loan to pay off Patricia's second mortgage with Badger State Bank. Doug did not do so and only made one payment of

$600.00 to Badger State Bank. In his deposition, Doug stated that he agreed to make payments on Patricia's second mortgage, but would need to talk to an attorney to determine if he was legally responsible for its payment.

¶ 7. Gerald died on September 22, 2007. Patricia received the proceeds of Gerald's life insurance policy in the amount of $43,994.87. Patricia used the money from the life insurance policy to pay off her second mortgage and other debts left by Gerald. Jessica then brought this action to recover the proceeds of Gerald's life insurance policy from Patricia. Both parties moved for summary judgment. The trial court granted summary judgment to Jessica, imposing a constructive trust over the proceeds in Jessica's favor. Patricia appeals.

*Standard of Review*

¶ 8. We perform summary judgment analysis de novo, applying the same methodology employed by the trial court. *See Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). "[S]ummary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189, 260 N.W.2d 241 (1977). "The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment." *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If a genuine issue of fact exists, the motion for summary judgment must be denied. *Id.* at 118. "The

question upon review of an order granting a motion for summary judgment is not necessarily whether the inferences that have been drawn are reasonable but whether the record reveals there are competing inferences that could be considered reasonable." *Lecus*, 81 Wis. 2d at 189–90.

¶ 9. A constructive trust is an equitable remedy imposed to prevent unjust enrichment. *Richards v. Richards*, 58 Wis. 2d 290, 296, 206 N.W.2d 134 (1973). We review the trial court's decision to impose a constructive trust under an erroneous exercise of discretion standard. *Duhame v. Duhame*, 154 Wis. 2d 258, 265–68, 453 N.W.2d 149 (Ct App. 1989). "Discretionary acts are sustained if the trial court examined the relevant facts, applied the proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Parge v. Parge*, 159 Wis. 2d 175, 179, 464 N.W.2d 217 (Ct. App. 1990) (citation omitted).

## Discussion

¶ 10. Patricia contends that she is a bona fide purchaser of Gerald's life insurance proceeds and therefore her right to the proceeds supersedes Jessica's, invalidating the constructive trust the trial court imposed on the proceeds in Jessica's favor. *See Richards*, 58 Wis. 2d at 298 ("Where a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee by means of a constructive trust unless the transferee is a bona fide purchaser." (citation omitted)). Patricia argues that she is a bona fide purchaser because she gave a second mortgage on her home

for a loan to pay Night Hawk's business debt for Gerald in consideration for Gerald's naming her as the beneficiary on his life insurance policy, without knowledge of the life insurance provision in Gerald's marital settlement agreement. Alternatively, Patricia asserts that even if she is not a bona fide purchaser, a constructive trust is improper under the facts of this case because we held in *Duhame* that a constructive trust is prohibited where the life insurance provision in a divorce judgment is not "support-related." Lastly, Patricia argues that even if a constructive trust is allowed under the facts of this case, it would be inequitable to impose a constructive trust in Jessica's favor.

¶ 11. Jessica argues that the trial court properly imposed a constructive trust on the insurance proceeds because Gerald and Lisa's marital settlement agreement deprived Gerald of the right to transfer or sell his life insurance proceeds. Thus, Jessica contends that Patricia's lack of knowledge of the insurance provision in the marital settlement agreement is irrelevant. She asserts that, as in *Richards*, Gerald's wrongful conduct of naming his second wife as beneficiary means that his second wife was not a bona fide purchaser and that a constructive trust was properly imposed. Jessica responds to Patricia's alternative argument by asserting that the language of the marital settlement agreement and Lisa's affidavit clearly demonstrate that the life insurance provision in Gerald and Lisa's marital settlement agreement *was* support-related under *Duhame*. Finally, she argues that equity weighs in her favor.

¶ 12. We conclude first that *Duhame* does not establish a legal requirement that life insurance stipulations must be "support-related" for a court to impose a constructive trust over the insurance proceeds. We therefore do not address the parties' arguments as to

whether the life insurance provision in Gerald and Lisa's marital settlement agreement was or was not "support-related." Next, we conclude that there are competing reasonable inferences from the facts in the record as to whether or not Patricia "purchased" any of the life insurance proceeds, thus bringing her within the ambit of the bona fide purchaser exception under constructive trust jurisprudence. Thus, we conclude that summary judgment was improperly granted.

¶ 13. We begin by rejecting Patricia's argument that *Duhame* prohibits a court from establishing a constructive trust when a life insurance provision in a divorce stipulation is not "support-related." In *Duhame*, Clyde Duhame entered into a divorce stipulation with his wife, Dixie, agreeing to name their minor children as beneficiaries of his life insurance at his place of employment. *Duhame*, 154 Wis. 2d at 261–62. Clyde later married Elaine, and named her as the beneficiary of his life insurance. *Id.* at 263.

¶ 14. After Clyde died, his children sued Elaine for the life insurance proceeds, and the trial court imposed a constructive trust on the proceeds in the children's favor. *Id.* at 261. Elaine appealed, and we concluded that the case turned on the proper interpretation of the insurance provision of Clyde and Dixie's divorce stipulation. *Id.* at 261–62. We said: "Although the language of the stipulation is ambiguous on a number of fronts, it does require that two threshold factors be satisfied before a change in beneficiary is prohibited: (1) the insurance must be 'support-related'; and (2) the insurance must be 'employment-related.' " *Id.* at 263. We then turned to the disputed provision, and said: "The language at issue here was the result of a stipulation between the parties to the divorce. A stipulation is in the nature of a contract and

the trial court must seek a construction which will effectuate what appears to have been the intention of the parties." *Id.* at 263–64. Based on the language of the stipulation and Dixie's uncontroverted affidavit, we concluded that the intent of the parties was to prevent Clyde from removing his children as beneficiaries on his life insurance policy. *Id.* at 265. We also concluded that the life insurance provision was both "support-related" and "employment-related," meeting the divorce stipulation's "two threshold factors . . . before a change in beneficiary is prohibited." *Id.* at 263–67. We therefore concluded that Clyde was prohibited from removing his children as beneficiaries of his life insurance policy. *Id.*

¶ 15.　We disagree with Patricia's reading of *Duhame* as establishing an overarching requirement that insurance provisions in divorce stipulations must be "support-related" to allow a court to impose a constructive trust over the insurance proceeds. Rather, the "support-related" requirement in *Duhame* followed from the specific language of the Duhames' divorce stipulation. Significantly, we cited only the Duhames' divorce stipulation itself for the "support-related" requirement. That is, we did not cite any authority that would suggest the test applied absent the language in the Duhames' divorce stipulation. As we explained in *Duhame*, we relied on the divorce stipulation and Dixie's affidavit to determine whether Clyde was prohibited from removing his children as the beneficiaries on his policy.

¶ 16.　Here, it is undisputed that Gerald and Lisa agreed to name Jessica as the beneficiary of their life insurance policies, and that Gerald named Patricia instead. Patricia provides no basis for us to conclude that Gerald was free to name Patricia rather than Jessica as the beneficiary on his life insurance policy

contrary to the marital settlement agreement. The question, then, is whether or not the trial court erroneously exercised its discretion in imposing a constructive trust on the proceeds after Gerald named Patricia as the beneficiary of his life insurance policy in contravention of his marital settlement agreement with Lisa. *See id.* at 267–68 (turning to the question of the court's exercise of discretion after determining that a change in beneficiary was prohibited).

¶ 17. Patricia argues that the trial court erroneously exercised its discretion when it imposed a constructive trust on the life insurance proceeds because the undisputed facts establish that she is a bona fide purchaser of the proceeds, and thus a constructive trust is improper under *Richards*. Jessica responds that following the marital settlement agreement, Gerald had no right to name anyone other than Jessica as the beneficiary of his life insurance proceeds, and thus there was nothing for Patricia to "purchase." She further contends that the facts in this case are identical to the facts in *Richards*, where the supreme court imposed a constructive trust in favor of the deceased's children over insurance proceeds paid to the deceased's second wife.

¶ 18. In *Richards*, 58 Wis. 2d at 291–92, Jack Richards changed the beneficiary on his life insurance policy to his second wife, despite a stipulation in his divorce from his first wife to maintain his children as beneficiaries. His second wife did not know of the insurance policy until after Jack died. *Id.* at 292. After the trial court denied the children's claim to the proceeds, the supreme court "conclude[d] that, under the circumstances . . ., the children of the deceased were equitably entitled to the proceeds of the insurance policy and that a constructive trust should be imposed

on the proceeds for their benefit." *Id.* at 293–94. It explained that "[t]he constructive trust is an invention of equity by which liability is imposed to prevent unjust enrichment and unfairness." *Id.* at 296. In support of its decision, the court also cited the following rule from 5 SCOTT, LAW OF TRUSTS § 470, at 3444 (3d ed. 1967): "Where a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee [by means of a constructive trust] unless the transferee is a bona fide purchaser." *Richards*, 58 Wis. 2d at 298 (alteration in original).

¶ 19. Thus, because Gerald named Patricia as the beneficiary of his insurance policy in violation of his duty to name Jessica as the beneficiary, Jessica may reach those proceeds through a constructive trust unless Patricia was a bona fide purchaser of the proceeds.[5] A bona fide purchaser is a "grantee . . . who purchases in good faith, without notice, and for a valuable consideration." *Simpson v. Cornish*, 196 Wis. 125, 134, 218 N.W. 193 (1928). As strong as an equitable claim for a constructive trust may be, "it can in no case be stronger than that of a purchaser, who has put himself in peril by

[5] We disagree with Jessica's assertion that the facts of this case fall squarely under *Richards v. Richards*, 58 Wis. 2d 290, 206 N.W.2d 134 (1973). In *Richards*, the second wife did not claim she was a bona fide purchaser of the life insurance proceeds; in fact, she did not even know of the policy's existence until her husband's death. The wife in *Richards* had no basis to prevent a constructive trust over the insurance proceeds in favor of her husband's children, while the question in this case is whether Patricia can prevent a constructive trust in Jessica's favor based on her status as a bona fide purchaser. Thus, while *Richards* is helpful, it is not controlling.

purchasing a title, and paying a valuable consideration, without notice of any defect in it, or adverse claim to it." *See i d.* at 135. "Whether or not a purchaser is a bona fide purchaser should represent merely a question of fact, and justice and equity can be done in each particular case as it arises." *Id.* at 136.

¶ 20. We conclude that the facts in the summary judgment record support competing reasonable inferences as to whether Patricia was a bona fide purchaser of any of the life insurance proceeds, and thus summary judgment was improperly granted. *See Preloznik,* 113 Wis. 2d at 116. First, we reject Jessica's argument that Gerald's agreement to name Jessica as the beneficiary on his life insurance policy means there was nothing for Patricia to purchase, and that she therefore cannot be a "purchaser" of any kind. Despite Gerald's agreement to name Jessica as the beneficiary on his insurance policy, it is undisputed that he did, albeit wrongfully, name Patricia instead. Indeed, a claim to bona fide purchaser status arises only when one holding property transfers it to another despite having no right to do so.[6] Thus, the question is not whether Gerald had the "right" to name Patricia as the beneficiary; the question is whether Patricia was a bona fide purchaser of that status.

¶ 21. Patricia testified at her deposition that she would not have taken out a second mortgage on her house to satisfy Gerald's business debts without Gerald making her the beneficiary of his life insurance policy. However, there was no written contract regarding the transaction, and Gerald named Patricia as his life insurance beneficiary almost two months after Patricia

---

[6] This scenario is therefore not analogous, as Jessica contends, to the sale of the Brooklyn Bridge.

mortgaged her home to repay Night Hawk's debt with First National Bank. Two competing inferences can be drawn from these facts. First, it could be inferred that Patricia mortgaged her house to satisfy Night Hawk's debts for Gerald as consideration for his naming her as the beneficiary of his life insurance policy, based on her uncontroverted affidavit. Second, it could be inferred that Patricia did not mortgage her house to repay the debt as consideration, based on the lack of a formal contract and the span of time from when Patricia mortgaged her house until Gerald named her as the beneficiary on his policy.

¶ 22. Whether Patricia mortgaged her house to satisfy Gerald's business debts in consideration for the life insurance proceeds is a critical fact as to whether she was a bona fide purchaser of any of the proceeds, thus preventing a constructive trust over that amount in Jessica's favor. *See Richards*, 58 Wis. 2d at 298. If the trial court finds that Patricia did mortgage her house to repay Gerald's business debts in consideration for the life insurance interest, then, coupled with her uncontroverted testimony that she had no knowledge of the life insurance provision in the marital settlement agreement, Patricia is a bona fide purchaser of that amount of the life insurance interest, and a constructive trust over that amount is not appropriate. *See id.* However, if the trial court finds that Patricia did not mortgage her house to repay Night Hawk's debt in consideration for the life insurance interest, then she does not meet the bona fide purchaser criteria and a constructive trust may be appropriate. *See id.* at 296 ("[A]lthough a divorce judgment does not expressly prohibit the owner of an insurance policy from changing the beneficiary, the decree of the court is to be given the effect of a continuing obligation to carry out the provisions set

forth therein."). Because these competing inferences create a genuine issue of material fact, we conclude that Patricia is entitled to have these issues resolved at trial, not on summary judgment.[7]

¶ 23. If, on remand, the court determines that Patricia is not a bona fide purchaser, or that she is a bona fide purchaser of less than the total amount of the insurance proceeds, Patricia may still argue that a constructive trust is inequitable. "Since a constructive trust is an equitable remedy, the trial court has the power to apply the remedy as necessary to meet the needs of the particular case." *Prince v. Bryant*, 87 Wis. 2d 662, 674, 275 N.W.2d 676 (1979). Therefore, "[t]he court may . . . take into account other factors brought to its attention by the parties relating to the equity of the distribution. It may then make an apportionment of the proceeds, granting or denying a con-

---

[7] If Patricia establishes that she is a bona fide purchaser of the insurance proceeds, she can prevent a constructive trust over the amount of the proceeds equal to the amount she purchased. *See* BOGERT'S TRUSTS AND TRUSTEES § 881, at 204 (2d ed. 1995) ("A most important rule which limits the power of a beneficiary or other holder of an equitable interest to pursue and claim property is the doctrine to the effect that the transfer of the legal estate in property to a bona fide purchaser for value cuts off all equities *in the same property*." (emphasis added)). The record establishes that Patricia gave a second mortgage on her house in the amount of $32,117.11 to pay Night Hawk's debt. She received $43,994.87 in life insurance proceeds, and Doug Bartow made one $600 payment to Patricia towards paying her second mortgage. Thus, if the court determines that Patricia is a bona fide purchaser of the insurance proceeds, it will then need to determine the amount that Patricia purchased to determine if there are any excess proceeds that Jessica may reach through a constructive trust.

structive trust as to all or a part of the property." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 681, 287 N.W.2d 779 (1980). "The extent to which a constructive trust should be imposed upon . . . insurance proceeds can only be determined after an evidentiary hearing and a careful and equitable consideration of all relevant factors." *Prince*, 87 Wis. 2d at 673. Furthermore, it is appropriate to consider the equitable principles favoring both Jessica and Patricia. *See Lee v. Preiss*, 18 Wis. 2d 109, 116, 118 N.W.2d 104 (1962). The court should take into account relevant factors in this case including: debts incurred during marriage for which Patricia remains responsible; Patricia's contribution to Jessica's financial support during the time of her marriage to Gerald; and the welfare of Jessica, who Gerald and Lisa intended to benefit from the proceeds of the policy. Accordingly, we reverse and remand with directions to deny the parties' summary judgment motions and to proceed to trial on the issue of whether Patricia was a bona fide purchaser of the insurance proceeds.

*By the Court.*—Judgment and order reversed and cause remanded with directions.