**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 6, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1788**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV10

**IN COURT OF APPEALS
DISTRICT III**

CHARLES VAN HULLE,

　PETITIONER-RESPONDENT,

　V.

JAMES VAN HULLE, THOMAS VAN HULLE,
RICHARD FRANCIS EPARVIER, DANIEL MURPHY,
ANDREW G. VAN HULLE, CAROL ANN VAN HULLE AND
DANIEL H. VAN HULLE,

　RESPONDENTS-APPELLANTS,

EDWARD VAN HULLE, TERRI OLSEN, JEAN VAN HULLE,
PATRICIA VAN HULLE, DAWN VAN HULLE AND PAUL OLSEN,

　INTERESTED PERSONS.

　　　　　APPEAL from a judgment of the circuit court for Florence County:
LEON D. STENZ, Judge. *Affirmed*.

　　　　　Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  James Van Hulle[1] appeals a judgment entered in favor of Charles Van Hulle, following a bench trial.  The judgment imposed a constructive trust on the one-fifth interest James currently has in certain Florence County property, and it required James to convey his interest to himself and his four siblings as tenants in common.  James received his interest in the property by a quit claim deed from his father, but the circuit court concluded his father had meant only to make James the primary person who could conduct lease negotiations with the other property owners on behalf of James' siblings.

¶2    The circuit court determined that equitable principles supported the imposition of the constructive trust.  James argues that there was no mistake regarding the contents of the unambiguous quit claim deed transferring the property interest to him so as to support a reformation of the deed.  James therefore contends the court erred by imposing a constructive trust on his one-fifth interest without a proper showing of the mistake upon which the court granted Charles relief.  We reject all of James' arguments and affirm.

## BACKGROUND

¶3    In the late 1950s, John Van Hulle—who is the father of James, Charles, Edward, Daniel and Terri—together with John's father and John's uncle, purchased fifty-five acres in Florence County ("the Property").  The three original

---

[1] Because the parties share a surname, we refer to them individually by their given names.

individuals on the deed subsequently let others into the ownership group. Eventually, the Property was owned by John Van Hulle, Howard Van Hulle, Glen Van Hulle, Thomas Van Hulle, and Thomas Murphy. In 1972, John built a cabin on a 1.44-acre section of the Property to which the judgment indicated he had exclusive use. We refer to this particular section of the Property as "the Cabin Land."

¶4 In January 1991, the five owners of the fifty-five-acre parcel entered into a handwritten lease ("the Lease"), which purported to allow John to manage and control the Cabin Land. The Lease restricted the use of that land to personal purposes and forbade all commercial use. It also provided that the cabin itself could be expanded or replaced, but that multiple cabins could not be constructed. John, as lessee, was responsible for paying taxes on the improvements, and if he failed to do so, the Lease would be terminated. The Lease contained the five lessors' names but no signatures.

¶5 A few months after the Lease was created, John executed a quit claim deed conveying his one-fifth interest in the Property to his son, James. Around the same time, John, James, James' siblings, and their spouses executed a handwritten contract ("the Contract"), which controlled how the Cabin Land would be used as well as the duties and responsibilities each family member assumed. The Contract declared that

> John Van Hulle of Krueger Quarry Road, County of Oconto, State of Wisconsin, has transferred his ownership of his one-fifth share of Florence [C]ounty property to James Van Hulle. This means James is the official representative for all of John[']s children and heirs that want to actively participate in the lease agreement between John and the five current owners of the total property.

¶6      In addition to designating James as the "official representative," the Contract appointed Charles to serve as "chairman of the group actively participating in the lease agreement," and it imposed responsibility upon Charles for developing a "rotating schedule" for cabin use.  The Contract also provided that the family members equally share in the expenses related to the Cabin Land—such as electricity, insurance, taxes, improvements and maintenance—and that any family members who failed to make their shared payments forfeited their right to use the Cabin Land.  Any major improvements to the Cabin Land were to be agreed upon by a majority of the family members.  The Contract foreclosed expansion of the number of family members who could share in using the Cabin Land and join in the Contract itself.

¶7      The Contract then governed the use of the Cabin Land for over twenty years.  During that time, James represented the family in dealings with the other owners of the larger parcel, and each family paid its equal share for operating the cabin.  Any excess amount of expenses paid would be remitted to each family member equally.

¶8      In late 2014 or early 2015, James began paying expenses for the Cabin Land himself rather than obtaining contributions from family members.  In April 2015, James drafted an agreement ("the Usage Agreement") specifically stating that he had the sole and exclusive right to determine the use of the Cabin Land.  James presented the Usage Agreement to the other owners for signature. The Usage Agreement provided that the document was

> personal to James Van Hulle and shall not be perpetual or assignable to his heirs.  Furthermore, at such time as James Van Hulle wishes to terminate this Agreement, he shall provide the other co-owners with a quit claim deed releasing his rights under this Usage Agreement.  If not, all rights and duties shall terminate upon his death.

James claimed that the Usage Agreement was drafted to cure the Lease's defect of not being signed, and to clarify that he would pay the real estate expenses and control all use of the Cabin Land.

¶9 James then asked his siblings to sign the Usage Agreement. In doing so, they had to acknowledge that James alone owned the Cabin Land and controlled their interest in the Property. The siblings were hesitant to sign the Usage Agreement because it superseded the Contract they originally signed, which confined James' responsibility to serve as being the "official representative" in dealing with the owners of the larger parcel. Thomas, Daniel and James eventually signed the Usage Agreement, but the other siblings, including Charles, did not. In 2015, James stopped scheduling cabin usage to all other family members, and thereafter he was the only family member to use the cabin.

¶10 Charles filed a complaint in this action, which he subsequently amended. The amended complaint alleged that James breached the Lease and the Contract by executing the Usage Agreement, and by doing so, he violated his fiduciary duty owed to John's other children. Charles sought relief requesting: (1) James to act for the benefit of John's heirs and to permit them to exercise their rights under the Contract; (2) a judgment voiding the Usage Agreement or, in the alternative, an injunction permanently enjoining the enforcement of the Usage Agreement; (3) injunctive relief enforcing the unsigned lease agreement; and (4) an award of monetary damages, punitive damages, and attorney fees and costs.

¶11 The circuit court held a two-day bench trial. It ultimately denied Charles' request to reform the deed between John and James so as to include all of the siblings as co-owners, concluding that the deed itself was unambiguous.

Specifically, the court found that John intended to give his one-fifth interest in the Property to James and there was no mistake in that regard or otherwise in the deed itself. Meanwhile, the court concluded Charles presented no evidence showing that John intended to execute a different document or to agree to something other than as stated in the deed. John understood that James was receiving ownership.

¶12 However, based on extrinsic evidence surrounding the related transactions and decades of the parties' conduct, the circuit court concluded that the reason for John's transfer of his interest to James was not to give James exclusive control over the Cabin Land vis-à-vis James' siblings. Instead, John "did exactly what he wanted to do," which was to give his interest in the Property to James but only for the understood purpose of James being the family representative in dealing with the other owners of the Property.

¶13 Based upon this finding, the circuit court further determined that it would impose a constructive trust on James' one-fifth interest in the Property "in favor of the heirs of John Van Hulle (Charles Van Hulle, Edward Van Hulle, Terri Olsen, Daniel Van Hulle and James Van Hulle)." The court noted that while James was not engaged in any type of fraud or abusive confidential relationship, his sole ownership of John's interest in the Property nevertheless was obtained by mistake. Specifically, it determined that John inadvertently thought that by deeding his interest in the Property to James only, James could get the beneficial use—to wit, to "get the use to negotiate and deal with the general owners and to make those decisions [easier] for the group," while "he was still subject to the condition that [he] was as an official representative and that they all shared equally in the [P]roperty."

¶14     The circuit court stated that a constructive trust could be imposed when title to property is held by someone who, in equity and good conscience, should not be entitled to the enjoyment of it.  The court concluded that it would be inequitable for James to retain sole title/ownership of the one-fifth interest in the Property, "due to mistake and unjust enrichment."  The court found that the Contract "established a fiduciary duty upon James" and that he breached that fiduciary duty by entering into the Usage Agreement.  The court also found that the Usage Agreement directly conflicted with the Contract entered into between John and all of his children, including James.  The court disagreed with James' assertion that the Usage Agreement protected his siblings.  In fact, the court found that it did quite the opposite, as the siblings no longer had the right under the Usage Agreement to use the Cabin Land.

¶15     Ultimately, the circuit court imposed a constructive trust on James' one-fifth interest in the Property in favor of John's heirs, and it invalidated the Usage Agreement.  James was ordered to execute a deed transferring his interest to "all the siblings or their heirs as tenants in common for the one-fifth interest in the property."  James now appeals.

**DISCUSSION**

¶16     "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses."  WIS. STAT. § 805.17(2) (2019-20).  A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence.  *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.  We may search the record for evidence in support of

the circuit court's factual findings. *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

¶17 We review the circuit court's decision to impose a constructive trust under the erroneous exercise of discretion standard. *Pluemer ex rel. Buggs v. Pluemer*, 2009 WI App 170, ¶9, 322 Wis. 2d 138, 776 N.W.2d 261. We will sustain a discretionary act where the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Gaugert v. Duve*, 2001 WI 83, ¶44, 244 Wis. 2d 691, 628 N.W.2d 861.

¶18 James' entire argument is reduced to an alleged inherent inconsistency between two of the circuit court's conclusions. James asserts the court first concluded that there was no basis to reform John's deed conveying his interest in the Property to James because John did not mistakenly transfer his entire fee interest to James—James asserts that he clearly intended to do so. James contends that this conclusion is directly contradictory to the court's second conclusion that a constructive trust should be imposed on James' interest in the Property based upon a factual finding that John never intended James to have exclusive use of the Cabin Land to the detriment of John's other children.

¶19 James also argues that there must be an additional showing beyond unjust enrichment in order to properly impose a constructive trust. In support of this contention, James cites *Pulkkila v. Pulkkila*, 2020 WI 34, 391 Wis. 2d 107, 941 N.W.2d 239. There, the Wisconsin Supreme Court noted:

> Unjust enrichment by itself is not sufficient to require the imposition of a constructive trust. Indeed, a constructive trust will be imposed only where there is a demonstration of unjust enrichment accompanied *by an "additional showing"* of "actual or constructive fraud, duress, abuse of

> confidence, *mistake*, commission of a wrong, or by any form of unconscionable conduct" that has caused the one against whom a trust is imposed to either obtain or hold legal title to property which that person ought not in equity and good conscience enjoy. In short, both unjust enrichment and the "additional showing" are required.

*Id.*, ¶30 (citations omitted; emphasis added). James asserts that Charles has failed to prove any such additional showing.

¶20     Specifically, James contends the circuit court erroneously exercised its discretion by determining that a mistake justified the imposition of a constructive trust. The court expressly held that John had not made a mistake sufficient to warrant deed reformation. The court, however, did find that a mistake was made with respect to Charles' claim for a constructive trust. James argues that if there was no mistake that would justify deed reformation, the court necessarily erred in finding a mistake that justified the imposition of the constructive trust. According to James, "It cannot be both ways." Additionally, James argues that the court erroneously exercised its discretion because the court did not demonstrate a "rational process in imposing a constructive trust" against James, absent an additional showing beyond unjust enrichment—"here, mistake, in order to satisfy the legal standard for a constructive trust." Finally, James believes that "[u]nder the circumstances here, there is no meaningful distinction between a mistake under a claim for reformation and a claim for the imposition of a constructive trust such that the mistake element may not be satisfied for one claim but may be satisfied for the other."

¶21     We disagree with James' various contentions. As Charles correctly points out and the circuit court held, reformation and constructive trusts are distinct legal concepts. As to reformation, "Wisconsin courts have long recognized that a court in equity can reform written instruments that, by mutual

9

mistake, do not express the true intentions of the parties." ***Chandelle Enters., LLC v. XLNT Dairy Farm, Inc.***, 2005 WI App 110, ¶18, 282 Wis. 2d 806, 699 N.W.2d 241. To show a mutual mistake sufficient to support reformation, there must be clear and convincing evidence that both parties intended to make a different instrument than the one signed and that both parties agreed on facts different than those set forth in the instrument. ***Prezioso v. Aerts***, 2014 WI App 126, ¶39, 358 Wis. 2d 714, 858 N.W.2d 386.

¶22 There was no such showing of mutual mistake regarding the deed here. The circuit court found that the quit claim deed was unambiguous on its face. The extrinsic evidence (here, the Contract and, to a lesser extent, the Lease) established that John wanted to give his interest in the Property to James, but with the understanding that he was going to act in a representative capacity for the benefit of all of his siblings. Resort to extrinsic evidence, however, (such as the Contract and the family's subsequent conduct pursuant to it) is proper to show the parties' intent only if we conclude there is ambiguity within the four corners of the deed. *See **Rikkers v. Ryan***, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). The court correctly determined the deed was unambiguous, and, therefore, the Contract and wealth of other evidence extrinsic to the deed could not be considered when determining if there was a basis to reform the deed.

¶23 Conversely, the Contract and other extrinsic evidence could be considered when determining whether a constructive trust should be imposed in equity. *See **Masino v. Sechrest***, 268 Wis. 101, 110, 66 N.W.2d 740 (1954). It was clear from the Contract and other evidence that John did not intend to permit James to own and use his interest in the Property to the exclusion of James' siblings, especially as it pertained to the family's use of the Cabin Land. The circuit court thus noted that James' fee simple, exclusive interest—which gave

10

James the authority to shut his siblings out—was obtained by mistake. Namely, rather than acquiring sole ownership and use of the Property through the quit claim deed, extrinsic evidence showed that James was only to "get the use to negotiate and deal with the general owners and to make those decisions [easier] for the group but [that] he was still subject to the condition that [he] was an official representative and that they all shared equally in the [one-fifth interest of the Property]."

¶24 James and his siblings knew of his representative role and acted in accordance with that knowledge for over twenty years. During that time, James acted in his representative capacity in dealings with the other owners of the large parcel, and each family member paid an equal share for operating the Cabin Land and sharing in its use. We agree with the circuit court that James' unilateral use of that representative capacity to suddenly exclude his family members based on their refusal to sign the Usage Agreement—albeit consistent with his legal title to the Property—breached his implied fiduciary duty to his siblings.

¶25 James is now attempting to change the original relationship of the parties in a manner that unjustly enriches him. As the circuit court found, John erroneously thought that deeding his interest in the Property to James in fee simple would ensure that James served as fiduciary for his siblings and nothing more. Thus, there was a clear mistake. The court properly exercised its discretion in ordering a constructive trust in order to give full effect to John's original intention of providing James with his one-fifth interest in the Property for purposes of representing the rights of all of the siblings in the use of the Property, rather than requiring his siblings to recognize James' rights attendant to his ownership that were directly contrary to the Contract and the Lease.

¶26 Indeed, there was overwhelming evidence of John's intentions and James' actions contrary to those intentions. James never addresses how the circuit court erred in its relevant factual findings other than pointing to his own testimony and claiming that the court's finding of a mistake reached inconsistent legal conclusions on the merits of Charles' claims for deed reformation and the imposition of a constructive trust. The court, however, is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony. *Plesko v. Figgie Int'l*, 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994). The court found James' testimony to be "evasive" and "ludicrous." Furthermore, as explained above, the two "mistakes" at issue with respect to each legal doctrine are substantively different. There was no mistake in entering into the deed, which unambiguously transferred John's one-fifth interest in the Property to James. The only mistake that occurred was that John incorrectly thought that by deeding his interest in the Property to James, James would be required to act as a representative for the equal owners and users, rather than as the exclusive owner and possessor.

¶27 On appeal, Charles makes a compelling argument regarding James' efforts at trial—namely, James did not seek to further John's plan through the Usage Agreement but, rather, to override it. If James' assertion were right—i.e., that as the fee simple owner, he alone possessed full control over the interest in Property—then John was mistaken and his plan fails because the deed to James and the Contract could not ensure his children's equal use of the Property. And, if James was merely attempting to further John's plan by requiring his siblings' assent to the Usage Agreement, then the constructive trust clarifies and accomplishes what John functionally planned in the first place. In any event,

neither of the scenarios justifies awarding James property that was never intended by John for James' exclusive use to the detriment of his siblings.

¶28     The record supports the circuit court's determinations both that James was unjustly enriched and that Charles made the additional showing of a mistake by John regarding the effect of deeding his one-fifth interest in the Property to James.  Contrary to James' assertions, the court made no contradictory factual findings, much less found "without explanation" that John made a mistake sufficient to impose a constructive trust.  In all, we perceive no basis on which to conclude that the court erroneously exercised its discretion by voiding the Usage Agreement, imposing a constructive trust, and ordering James to deed the one-fifth interest in the Property equally to himself and his four siblings in order to satisfy that constructive trust.

*By the Court*.—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).