# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP712-FT |

| | |
|---|---|
| COMPLETE TITLE: | Joan C. Pulkkila,<br>     Petitioner-Appellant,<br>    v.<br>James M. Pulkkila,<br>     Respondent,<br>Lynnea Landsee-Pulkkila,<br>     Other Party-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 386 Wis. 2d 352,927 N.W.2d 164
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | April 14, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 14, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Paul Bugenhagen Jr. |

JUSTICES:

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER, and KELLY, JJ.., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

NOT PARTICIPATING:

DALLET and HAGEDORN, JJ.

ATTORNEYS:

For the other party-respondent-petitioner, there were briefs filed by *Jeffrey A. Mandell, Eileen M. Kelley, Jared M. Potter,* and *Stafford Rosenbaum LLP,* Madison and Milwaukee. There was an oral argument by *Jeffrey A. Mandell*.

For the petitioner-appellant, there was a brief filed by *Daniel J. O'Brien, Angela C. Foy,* and *Halling & Cayo, S.C.,* Milwaukee. There was an oral argument by *Daniel J. O'Brien*.

**2020 WI 34**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP712-FT
(L.C. No. 2008FA696)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Joan C. Pulkkila,**

      **Petitioner-Appellant,**

  **v.**

**James M. Pulkkila,**

      **Respondent,**

**Lynnea Landsee-Pulkkila,**

      **Other Party-Respondent-Petitioner.**

**FILED**

**APR 14, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER, and KELLY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

DALLET and HAGEDORN, JJ., did not participate.

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Lynnea Landsee-Pulkkila (Lynnea), seeks review of an unpublished, authored decision of the court of appeals applying a constructive trust to

proceeds she collected from a life insurance policy maintained by her late husband, James Pulkkila (James).[1] She asserts that the court of appeals erred by determining that constructive trust is an available remedy and by applying that remedy.

¶2 James and Joan Pulkkila (Joan) divorced in 2009. They arrived at a marital settlement agreement (MSA), which the circuit court incorporated in its judgment of divorce. The MSA contained a provision requiring James and Joan to maintain life insurance with their children as beneficiaries. Joan alleges that James breached this provision when he made Lynnea, who he married in 2013, the sole beneficiary of (his) life insurance policy, and argues that a constructive trust should be placed on the proceeds.

¶3 Lynnea contends that a constructive trust cannot be applied to the life insurance proceeds because the MSA provides that a lien on James's estate is the exclusive remedy for breach of the life insurance provision. Further, she asserts that the court of appeals erred by applying a constructive trust in the absence of additional proceedings in the circuit court.

¶4 We conclude first that the lien provision of the MSA is not an exclusive remedy. Second, we conclude that the court of appeals erred in imposing a constructive trust absent findings of fact that would support such an imposition. We remand to the

---

[1] Pulkkila v. Pulkkila, No. 2018AP712-FT, unpublished slip op. (Wis. Ct. App. Feb. 27, 2019) (reversing and remanding order of the circuit court for Waukesha County, Paul Bugenhagen, Jr., Judge).

2

circuit court to engage in factfinding and subsequently determine whether to impose a constructive trust in the first instance.

¶5   Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

I

¶6   James and Joan were married in 1996 and divorced in 2009. At the time of the divorce, they had two minor children.

¶7   As the divorce proceeded, James and Joan negotiated the MSA.  They arrived at an agreement and submitted the MSA to the circuit court, which incorporated the MSA into its judgment of divorce.[2]

¶8   The MSA contains a section entitled, "Life Insurance." Pursuant to this section, James and Joan agreed as follows:

> Both parties shall maintain in full force and pay the premiums on all life insurance presently in existence on their lives or obtain comparable insurance coverage, with the parties' minor children named as sole and irrevocable primary beneficiaries until the youngest minor child reaches the age of majority, or until the child has reached the age of 19 so long as the child is pursuing an accredited course of instruction leading to the acquisition of a high school diploma or its equivalent.  During the term of such obligation, each of the parties shall furnish the other with copies of such policies or evidence of there being such insurance in force and proof of beneficiary designation upon request.

---

[2] The Honorable James R. Kieffer presided at the initial divorce proceedings, while the Honorable Paul Bugenhagen, Jr., presided at the proceedings related to the constructive trust issue now before this court.

¶9 Further, the "Life Insurance" section of the MSA sets forth a remedy in the event either party breaches the provision. Specifically, it provides:

> If either party fails for any reason to maintain any of the insurance required under this article, there shall be a valid and provable lien against his or her estate in favor of the specified beneficiary to the extent of the difference between the insurance required and the actual death benefits received.

¶10 Prior to the divorce, in 2002, James obtained a $250,000 life insurance policy from Banner Life. At the time he obtained the policy, James named Joan as the primary beneficiary.

¶11 In 2013, James and Lynnea were married, and the following year James submitted a beneficiary name change request to Banner Life, asking that Lynnea be made the sole beneficiary of the policy. James passed away in 2015. At the time of his death, both of his children were minors.

¶12 Banner Life paid Lynnea the proceeds of the policy. Subsequently, Joan filed a motion in the divorce action, seeking three iterations of relief. First, she moved to join Lynnea to the action as a third party, asserting that "the proceeds from one of [James's] life insurance policies were paid to Ms. Landsee-Pulkkila in violation of the [Judgment] of Divorce and complete relief cannot be accorded unless Ms. Landsee-Pulkkila is joined."

¶13 Second, Joan moved to enforce the judgment of divorce, seeking "an order requiring Ms. Landsee-Pulkkila to return proceeds from [James's] life insurance policy that were paid to her in violation of the Judgment of Divorce in this matter and for such other relief as the Court deems appropriate." Third, Joan

4

moved to establish a constructive trust for her and James's children's benefit over the life insurance proceeds that were paid to Lynnea.

¶14 The circuit court held a hearing on the motion and ultimately denied Joan's motion for a constructive trust, reasoning that the MSA unambiguously provided that a lien on James's estate is the exclusive remedy for breach of the life insurance provision. Because it determined the lien remedy to be exclusive, it concluded that a constructive trust was not an available remedy. It explained:

> [T]he Court's job isn't to go back and fix the parties' agreement to make it fair now for the children. It's not fair they're not getting as much money. They lost their father. It is a rotten deal for them. However, this Court has to follow the law on it. The contract is not ambiguous to this Court. That is simply a question of law. . . . It is clear to this Court that that was the bargaining, and I'm not going to step outside of their agreement to provide for other remedies.

¶15 Additionally, the circuit court expressly declined to address several of the issues raised by Joan's motion and Lynnea's response, reasoning that such issues could be addressed if necessary on remand from an appellate court. It stated, "I believe that if I am overturned, the Court will give some instructions that we have to have a hearing as to what to do with this constructive trust." It further stated that it would not be taking up the issue of whether the proper parties were before the court, but again, it may do so on remand if necessary: "The Court may or may not take up the issue of whether or not we have the proper

parties to this, that is the question I'm not reaching today.  So the Court may send that back with directions as well."

¶16 Joan appealed, and the court of appeals reversed and remanded.  Pulkkila v. Pulkkila, No. 2018AP712-FT, unpublished slip op., ¶1 (Wis. Ct. App. Feb. 27, 2019).  First, it rejected the circuit court's conclusion that the lien remedy in the MSA is an exclusive remedy.  Id., ¶9.  Specifically, it determined that such a remedy was "meaningless" under the facts of this case because James's estate contained nowhere near enough money to provide for his children in the manner the life insurance proceeds would have:  "The problem with this argument is that the remedy is meaningless.  Equity might allow for James' wrongdoing if his estate had $250,000, but it did not.  It had $5600.  James' new wife cites no case law, and we have found none, where under these or similar factual circumstances, a constructive trust is unavailable if a meaningless remedy exists."  Id.

¶17 The court of appeals determined next that "[t]he equities of this case mandate the creation of a constructive trust in favor of the children so as to accomplish the intent of the MSA."  Id., ¶10.  In the court of appeals' view, "[a]ll of the requirements of a constructive trust have been satisfied:  James' new wife received and retained a benefit, which was unjust to James' children who were denied their guaranteed means of support, and the aforementioned unjust enrichment was the result of James' wrongful conduct in violating the MSA."  Id.  Accordingly, it concluded that "[e]quity requires the imposition of a constructive trust."  Id.  Lynnea petitioned this court for review.

II

¶18 We are called upon to review the court of appeals' decision determining that a constructive trust must be imposed. A decision to impose a constructive trust is subject to a two-tiered standard of review. Sulzer v. Diedrich, 2003 WI 90, ¶16, 263 Wis. 2d 496, 664 N.W.2d 641. Legal issues, such as the interpretation of a marital settlement agreement, are reviewed independently of the determinations rendered by the circuit court and court of appeals. Id.; see Topolski v. Topolski, 2011 WI 59, ¶28, 335 Wis. 2d 327, 802 N.W.2d 482.

¶19 However, the ultimate decision of whether to grant the equitable relief of a constructive trust is reviewed for an erroneous exercise of discretion. Sulzer, 263 Wis. 2d 496, ¶16; Pluemer ex rel. Buggs v. Pluemer, 2009 WI App 170, ¶9, 322 Wis. 2d 138, 776 N.W.2d 261. An exercise of discretion is erroneous if it is based on an error of law or fact. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, 2018 WI 19, ¶29, 380 Wis. 2d 60, 908 N.W.2d 797. A discretionary determination will be upheld as long as the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." LeMere v. LeMere, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (quoting Long v. Long, 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995)).

III

¶20 We initially examine the MSA to determine if a lien on James's estate is the exclusive remedy for a breach of the life

7

insurance provision. Subsequently, we turn to address whether the court of appeals properly applied a constructive trust to the life insurance proceeds in Lynnea's possession. Finally, we provide guidance to the circuit court as it conducts proceedings on remand.

A

¶21 As stated, James and Joan, through the negotiation of the MSA and the subsequent incorporation of the MSA in the circuit court's judgment of divorce, agreed that "[b]oth parties shall maintain in full force and pay the premiums on all life insurance presently in existence on their lives or obtain comparable insurance coverage, with the parties' minor children named as the sole and irrevocable primary beneficiaries . . . ." The MSA further provides a remedy in the event either party breaches the provision:

> If either party fails for any reason to maintain any of the insurance required under this article, there shall be a valid and provable lien against his or her estate in favor of the specified beneficiary to the extent of the difference between the insurance required and the actual death benefits received.

¶22 Lynnea contends that the remedy provision sets forth a single and exclusive remedy in the event of either party's breach of the life insurance requirement in the MSA: a lien against the estate of the breaching party. In contrast, Joan asserts that the lien provision is not an exclusive remedy and that as a result other remedies, including constructive trust, are available.

¶23 We agree with Joan on this point. Although the remedy provision states that there "shall" be a lien, it does not follow

8

that all other remedies are inapposite. There is no such limiting language in the MSA.

¶24 This result is compelled regardless of whether we label the MSA as a judgment of the circuit court or as a contract. If we call the MSA a judgment, we follow this court's precedent indicating that "[a] divorce judgment that is clear on its face is not open to construction." Washington v. Washington, 2000 WI 47, ¶17, 234 Wis. 2d 689, 611 N.W.2d 261. The MSA is clear on its face——although a lien on James's estate is plainly an available and mandatory remedy for breach of the life insurance provision, there is no limiting language that would indicate that it is the only remedy for such a breach.

¶25 Similarly, if we call the MSA a contract, Lynnea's argument fares no better. "Although the parties may, in their contract, specify a remedy for a breach thereof, that specification does not exclude other legally recognized remedies. A contract will not be construed as taking away a common-law remedy unless that result is imperatively required." Local 248 UAW v. Natzke, 36 Wis. 2d 237, 251, 153 N.W.2d 602 (1967); see also Coleman v. Percy, 86 Wis. 2d 336, 340, 272 N.W.2d 118 (Ct. App. 1978) (explaining that "a contract will not be construed to take away a common law remedy unless that result is imperatively required").

¶26 Further, adopting Lynnea's argument would run afoul of the maxim that we "will not read words into the contract that the parties opted not to include." Ash Park, LLC v. Alexander & Bishop, Ltd., 2015 WI 65, ¶66, 363 Wis. 2d 699, 866 N.W.2d 679. As a result, although the MSA is clear that a lien is a remedy, we

9

decline to read in language indicating that a lien is the exclusive remedy.

¶27 Accordingly, we conclude that the lien provision of the MSA is not an exclusive remedy.

B

¶28 We turn now to address whether the court of appeals properly applied a constructive trust to the life insurance proceeds in Lynnea's possession.

¶29 "A constructive trust is an equitable device used to prevent unjust enrichment which arises when a party receives a benefit the retention of which is unjust to another party." Sulzer, 263 Wis. 2d 496, ¶20 (citing Wilharms v. Wilharms, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980)). Conceptually, it is a remedy "used to address situations in which the legal and beneficial interests in a particular piece of property lie with different people." Tikalsky v. Friedman, 2019 WI 56, ¶¶18-19, 386 Wis. 2d 757, 928 N.W.2d 502.

¶30 Unjust enrichment by itself is not sufficient to require the imposition of a constructive trust. Sulzer, 263 Wis. 2d 496, ¶20. Indeed, a constructive trust will be imposed only where there is a demonstration of unjust enrichment accompanied by an "additional showing" of "actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct" that has caused the one against whom a trust is imposed to either obtain or hold the legal title to property which that person ought not in equity and good conscience to enjoy. Tikalsky, 386 Wis. 2d 757, ¶21 (quoting

10

Gorski v. Gorski, 82 Wis. 2d 248, 254-55, 262 N.W.2d 120 (1978)).

In short, both unjust enrichment and the "additional showing" are

required.  Id.

¶31  In this case, the circuit court did not reach the issue

of whether to apply a constructive trust because it determined

that constructive trust was not an available remedy.  It therefore

found no facts and took no evidence.

¶32  The court of appeals, on the other hand, concluded that

a constructive trust was not only available but that it was

necessary.  In the court of appeals' view, "[t]he equities of this

case mandate the creation of a constructive trust in favor of the

children so as to accomplish the intent of the MSA."  Pulkkila,

No. 2018AP712-FT, unpublished slip op., ¶10.

¶33  By imposing a constructive trust in the absence of any

factfinding by the circuit court, the court of appeals in this

case jumped the gun.  As stated, the imposition of a constructive

trust requires a demonstration of unjust enrichment accompanied by

the "additional showing" set forth in Tikalsky, 386 Wis. 2d 757,

¶21.  Without the benefit of factfinding by the circuit court,

such an "additional showing" cannot be demonstrated.

¶34 Whether to impose a constructive trust is a

discretionary determination that must be made through examination

of the relevant facts.  See Pluemer, 322 Wis. 2d 138, ¶9

(explaining that the decision as to whether to impose a

constructive trust, as a discretionary determination, will be

sustained on appeal if the circuit court "examined the relevant

facts, applied the proper standard of law, and, using a

11

demonstrated rational process, reached a conclusion that a reasonable judge could reach"). The circuit court here did not examine the relevant facts because it did not reach the constructive trust issue, and the court of appeals did not examine the relevant facts because the circuit court had found none.

¶35 Additionally, case law indicates that "[t]he extent to which a constructive trust should be imposed upon . . . insurance proceeds can only be determined after an evidentiary hearing and a careful and equitable consideration of all relevant factors." Pluemer, 322 Wis. 2d 138, ¶23 (quoting Prince v. Bryant, 87 Wis. 2d 662, 673, 275 N.W.2d 676 (1979)). Like the "additional showing" requirement, the "extent" of any constructive trust that should be imposed cannot be demonstrated in a record vacuum, in the absence of factual findings. Accordingly, the court of appeals erroneously exercised its discretion because it determined that a constructive trust was appropriate in the absence of an evidentiary hearing and resulting relevant factual findings.

¶36 The circuit court here correctly recognized that factfinding would be necessary in the event of a remand. It stated, "I believe that if I am overturned, the Court will give some instructions that we have to have a hearing as to what to do with this constructive trust." The court of appeals' decision effectively short-circuits the circuit court's well-reasoned expectation and opportunity to consider such an issue.

¶37 Accordingly, we conclude that the court of appeals erred in imposing a constructive trust absent findings of fact that would

support such an imposition.[3] We remand to the circuit court to engage in factfinding and subsequently determine whether to impose a constructive trust in the first instance.

¶38 On remand, the circuit court will necessarily conduct an evidentiary hearing. See Pluemer, 322 Wis. 2d 138, ¶23. From the evidence deduced at this hearing, the circuit court will determine whether a constructive trust should be imposed, and if so, to what extent.

¶39 Whether to impose a constructive trust presents a fact-intensive inquiry. See Prince, 87 Wis. 2d at 667-68 (explaining that "in imposing the doctrine [of constructive trust] each case must be considered in the factual situation presented" and that "[e]quitable remedies must, of necessity, place heavy reliance on the facts of the particular controversy."). In reaching its determination, the circuit court may take into account "factors brought to its attention by the parties relating to the equity of the distribution. It may then make an apportionment of the proceeds, granting or denying a constructive trust as to all or a part of the property." Wilharms, 93 Wis. 2d at 681. Equitable

---

[3] Lynnea asserts in her briefs that the court of appeals' imposition of a constructive trust absent further proceedings in the circuit court constitutes a violation of due process. We need not address Lynnea's due process argument because we resolve this case based on the common law of constructive trust. "This court has frequently concluded that it need not address a claim of constitutional error if the claim can be resolved on statutory or common law grounds." State v. Dyess, 124 Wis. 2d 525, 533, 370 N.W.2d 222 (1985) (citations omitted).

principles favoring each party are appropriate considerations. See <u>Pluemer</u>, 322 Wis. 2d 138, ¶23.

¶40 The circuit court in this case may also take up additional issues on remand. It may address those issues it finds pertinent that it did not reach due to its previous determination that a lien is the exclusive remedy.[4]

IV

¶41 In sum, we conclude first that the lien provision of the MSA is not an exclusive remedy. Second, we conclude that the court of appeals erred in imposing a constructive trust absent findings of fact that would support such an imposition. We remand to the circuit court to engage in factfinding and subsequently determine whether to impose a constructive trust in the first instance.

¶42 Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶43 REBECCA FRANK DALLET and BRIAN HAGEDORN, JJ., did not participate.

---

[4] As stated, the circuit court also indicated that it would address issues of standing and proper parties on remand: "The Court may or may not take up the issue of whether or not we have the proper parties to this, that is the question I'm not reaching today."

14

¶44 REBECCA GRASSL BRADLEY, J. *(dissenting).* For nearly 85 years, marital settlement agreements ("MSAs") have been regarded as contracts under Wisconsin law, and once approved by circuit courts and entered as judgments, divorcing parties have organized their families' lives and financial affairs in reliance upon their terms. By supplanting the contractual remedy chosen by James and Joan Pulkkila——and approved by the circuit court judge——with an equitable remedy unavailable under black letter contracts law, the majority calls into question nearly century-old law, disturbs the long-settled expectations and reliance interests of thousands of divorced Wisconsin citizens, and leaves their negotiated marital settlements subject to the whim of judges. Divorced Wisconsinites beware: from this day forward, a court may at any time rewrite the terms of your marital settlement agreement if your former spouse comes to court pleading "unfair."

¶45 There is no dispute that before James died, he violated the life insurance provision of the MSA by naming his spouse the beneficiary instead of his daughters. In the MSA, he had agreed to maintain his daughters as beneficiaries until the youngest reached adulthood, but he failed to do so.[1] James' breach triggered

---

[1] This case involves the perpetuation of a significant factual error with respect to the older daughter's birthdate. The Judgment of Divorce, Joan's affidavit, and multiple other documents in the record list B.P.'s birthdate as August 18, 1988, which would have made her 27 years old——and not a minor——when her father died. This factual error went uncorrected in the court of appeals and in this court until the court raised it during oral argument. Joan's lawyer failed to correct this factual error until confronted by the court. Appellate courts rely on the record and the facts it contains. Lawyers have a duty "to correct a false statement of material fact or law previously made to the tribunal by the

the remedy specified in the MSA's life insurance provision, for which James and Joan fought "tooth and nail." This court should honor the parties' contractual remedy, enforce the MSA, and affirm the circuit court. Instead, the majority dismisses the MSA's contractual provisions as non-exclusive and authorizes the circuit court to consider imposing the extra-contractual and equitable remedy of a constructive trust.

¶46 I write separately to clarify that: (1) MSAs are contracts; (2) incorporation of an MSA into a divorce judgment does not alter its contractual nature; and (3) the remedy provided by the MSA and approved by the circuit court should be enforced. Whether the MSA was a contract was never in dispute. All parties agree the MSA was a contract between James and Joan and that the circuit court approved its provisions in 2009 by incorporating the MSA into the divorce judgment. The sole issues presented to this court were whether the MSA's specified remedy for breach of the insurance provision was the exclusive remedy, rendering a constructive trust unavailable and whether the court of appeals violated Lynnea's due process rights by imposing one.

¶47 By implying that an MSA loses its contractual nature after its incorporation into the circuit court's judgment, the majority destabilizes black letter divorce law. Treating an MSA as a judgment subject to equitable modification by a court would introduce a drastic sea change in the treatment of existing MSAs to the detriment of parties who reasonably expected finality once

---

lawyer." SCR 20:3.3. Joan's lawyer should have notified both the court of appeals as well as this court of the error.

their divorce judgments were entered. MSAs are contracts, remain so post-judgment, and should be enforced according to the terms for which the parties fought "tooth and nail." I would reverse the court of appeals decision imposing a constructive trust and reinstate the order of the circuit court. I respectfully dissent.

I

¶48 MSAs have been treated as contracts by this court for at least 83 years:

- <u>Vaccaro v. Vaccaro</u>, 67 Wis. 2d 477, 486, 227 N.W.2d 62 (1975) (holding that not all stipulations in divorce proceedings are contracts, but "contractual obligations arise only in situations where the court expressly refers to and approves a formal agreement between the parties, and not where, as here, the court merely adopts and to some extent modifies the parties' joint recommendations as to alimony, support or property settlement.").

- <u>May v. May</u>, 2012 WI 35, ¶¶4, 18, 339 Wis. 2d 626, 813 N.W.2d 179 (dealing with child support set forth in an MSA incorporated by the divorce judgment, stating "we are sensitive to the importance and prevalence of stipulations in helping families going through difficult and litigious divorces and curbing disagreements [between] the parties. <u>The ability to contract is fundamental to our legal system and may aid parties in settling their divorces</u> more amicably." (emphasis added) (quoting <u>Frisch v. Henrichs</u>, 2007 WI 102, ¶75, 304 Wis. 2d 1, 736 N.W.2d 85).

- Topolski v. Topolski, 2011 WI 59, ¶¶26-49, 335 Wis. 2d 327, 802 N.W.2d 482 (applying principles of contract interpretation to an MSA and the standard of review for written instruments).

- Schmidt v. Schmidt, 40 Wis. 2d 649, 653, 162 N.W.2d 618 (1968) ("Stipulations in divorce actions are in the nature of a contract." (citing In re Estate of Boyd, 18 Wis. 2d 379, 118 N.W.2d 705 (1963))).

- In re Estate of Boyd, 18 Wis. 2d 379, 381, 118 N.W.2d 705 (1963) ("A stipulation in a divorce action is in the nature of a contract." (citing Miner v. Miner, 10 Wis. 2d 438, 444, 103 N.W.2d 4 (1960)), abrogated on other grounds by Rohde-Giovanni v. Baumgart, 2004 WI 27, 269 Wis. 2d 598, 676 N.W.2d 452).

- Miner v. Miner, 10 Wis. 2d at 443-44, ("[T]here may be situations in which the parties enter into a formal contract or written agreement outside of court in which they finally settle all their financial rights and duties toward each other in contemplation of the uncertainties of the future. . . . When the court merely refers to such an agreement and approves it without making the provisions thereof a part of its judgment, the weight of authority is that such an agreement is not subject to modification by the court. . . . The arrangement is contractual, not a judicial determination, and therefore no more subject to change by the court than the terms of any other private agreement.").

4

- <u>Frisch v. Henrichs</u>, 2007 WI 102, ¶¶30, 75, 304 Wis. 2d 1, 736 N.W.2d 85 ("This case also requires us to review the 1996 stipulation agreement between the parties. The construction of a written contract is a question of law that we review de novo." (citation omitted); "[W]e are sensitive to the importance and prevalence of stipulations in helping families going through difficult and litigious divorces and curbing disagreements among the parties. The ability to contract is fundamental to our legal system and may aid parties in settling their divorces more amicably.")

- <u>Wright v. Wright</u>, 92 Wis. 2d 246, 248, 255, 284 N.W.2d 894 (1979) (dealing with a divorce judgment, while stating "[j]udgments are to be construed in the same manner as other written instruments." (citing <u>Vaccaro</u>, 67 Wis. 2d at 482)).

- <u>In re Will of Koeffler</u>, 218 Wis. 560, 561, 563-65, 260 N.W. 638 (1935) (referring to an "antenuptial agreement or marriage settlement" as a "marriage settlement <u>contract</u>"). (emphasis added).

¶49 MSAs have been treated as contracts by the Wisconsin Court of Appeals in many more cases:

- <u>Pulkkila v. Pulkkila</u>, No. 2018AP712-FT, unpublished slip op., ¶6 (Wis. Ct. App. Feb. 27, 2019) ("Importantly, the law of constructive trusts does not require a finding that <u>the contractual language</u> is ambiguous." (emphasis added)).

- <u>North v. Farris</u>, No. 2015AP1466, unpublished slip op., *2 (Wis. Ct. App. June 23, 2016) ("A marital settlement agreement is a type of contract.").

5

- Winters v. Winters, 2005 WI App 94, ¶¶15, 17, 21, 281 Wis. 2d 798, 699 N.W.2d 229 ("This issue requires us to interpret the language of the marital settlement agreement, which is a contract and subject to de novo review." (citing Taylor v. Taylor, 2002 WI App 253, ¶7, 258 Wis. 2d 290, 653 N.W.2d 524); applying principles of contract interpretation to the MSA; holding "the terms of the marital settlement agreement require . . . ").

- Taylor v. Taylor, 2002 WI App 253, ¶7, 258 Wis. 2d 290, 653 N.W.2d 524 ("This appeal, however, requires us to interpret the language of a marital settlement agreement, which is 'in the nature of a contract,' the construction of which is a question of law we review do novo." (citing Rosplock v. Rosplock, 217 Wis. 2d 22, 30, 577 N.W.2d 32 (Ct. App. 1998)); applying principles of contract interpretation to the MSA and concluding its terms are not ambiguous).

- Rosplock v. Rosplock, 217 Wis. 2d 22, 30, 577 N.W.2d 32 (Ct. App. 1998) (applying contract principles to the parties' written stipulation for maintenance while stating "[a] stipulation incorporated into a divorce judgment is in the nature of a contract.").

- Koonce v. Koonce, No. 00-2279-FT, unpublished slip op., ¶¶5-6 (Wis. Ct. App. Dec. 27, 2000) ("At issue is the interpretation of a marital settlement agreement. A stipulation incorporated into a divorce judgment is in the nature of a contract." (citation omitted); concluded the MSA was unambiguous).

6

- Paulson v. Lutze, No. 2015AP230-FT, unpublished slip op., ¶12 (Wis. Ct. App. Oct. 20, 2015) (per curiam) ("Just like the premarital agreement in Jones, the Paulsons' marital settlement agreement is a binding contract, in writing, and as such, it is an affirmative act where the parties are intentionally relinquishing known rights." (citing Jones v. Estate of Jones, 2002 WI 61, ¶17, 253 Wis. 2d 158, 646 N.W.2d 280)).

- Winters v. Winters, No. 2007AP909, unpublished slip op., ¶7 (Wis. Ct. App. Aug. 27, 2008) (per curiam) ("Because a marital settlement agreement is a contract, the interpretation of its language is subject to de novo review." (citing Winters, 281 Wis. 2d 798, ¶15)).

- Jalovec v. Jalovec, 2007 WI App 206, ¶¶4, 10 305 Wis. 2d 467, 739 N.W.2d 834 (With respect to the interpretation of an MSA, "[r]esolution of this issue requires us to construe the stipulation agreement between the parties. The construction of a written contract is a question of law" and holding the MSA violated public policy because it restricted the availability of child support modification).

- Ondrasek v. Tenneson, 158 Wis. 2d 690, 692-94, 462 N.W.2d 915 (Ct. App. 1990) ("The parties . . . entered into a marital settlement agreement. . . . The marital settlement agreement was incorporated into the judgment of divorce. . . . The construction of a written contract is normally a matter of law for the court.") (footnotes omitted; citations omitted).

7

- Grosshans v. Grosshans, No. 2005AP1770, unpublished slip op., ¶¶2, 5-6 (Wis. Ct. App. July 6, 2006) (per curiam) (calling an MSA "a contract," and applying "standard principles of contract construction" such as looking to the intent of the parties and holding the contract ambiguous).

- Duhame ex rel. Corrigan v. Duhame, 154 Wis. 2d 258, 264-65, 453 N.W.2d 149 (1989) ("The language at issue here was the result of a stipulation between the parties to the divorce. A stipulation is in the nature of a contract and the trial court must seek a construction which will effectuate what appears to have been the intention of the parties." (citations omitted)).

- Pluemer ex rel. Buggs v. Pluemer, 2009 WI App 170, ¶14, 322 Wis. 2d 138, 776 N.W.2d 261 ("A stipulation is in the nature of a contract and the trial court must seek a construction which will effectuate what appears to have been the intention of the parties." (quoting Duhame, 154 Wis. 2d at 264)).

- Kastelic v. Kastelic, 119 Wis. 2d 280, 287, 350 N.W.2d 714 (Ct. App. 1984) ("In divorce actions, stipulations are in the nature of a contract." (citing Schmidt, 40 Wis. 2d at 653)).

- Yacoub v. Yacoub, No. 2015AP2557, unpublished slip op., ¶18 (Wis. Ct. App. Mar. 14, 2017) (per curiam) ("'The construction of a written contract presents a question of law which we review do novo.' If the contractual terms are clear and unambiguous, as they are [in the MSA] here, we interpret the contract without considering extrinsic sources." (citations omitted)).

8

- <u>Wieland v. Wieland</u>, No. 2010AP3066, unpublished slip op., ¶10, (Wis. Ct. App. Mar. 28, 2012) (per curiam) (noting "[t]he record shows that the [marital settlement] agreement was a comprehensive contract," in response to a claim of estoppel preventing modification of the judgment).

- <u>Smith v. Smith</u>, No. 00-2123, unpublished slip op., ¶¶5-6, 8 (Wis. Ct. App. Feb. 21, 2001) (referring to an MSA incorporated into a divorce judgment as a "contract" and applying contract principles).

- <u>Dickau v. Dickau</u>, 2012 WI App 111, ¶¶14, 20, 344 Wis. 2d 308, 824 N.W.2d 142 ("We apply the rules of contract construction to a divorce judgment . . . . This is true even when the divorce judgment is based on the parties' stipulation. . . . In divorce actions, stipulations are in the nature of a contract." (quoting <u>Waters v. Waters</u>, 2007 WI App 40, ¶6, 300 Wis. 2d 224, 730 N.W.2d 655) (applying contract principles to the divorce judgment)).

- <u>Wagner v. Estate of Sobczak</u>, 2011 WI App 159, ¶7, 338 Wis. 2d 92, 808 N.W.2d 167 ("[T]he marital settlement agreement in this case . . . was incorporated into the final judgment of divorce. A judgment [of divorce] is interpreted in the same manner as other written documents." (citation omitted); discussing principles of contract construction for the divorce judgment incorporating the MSA).

- <u>Reetz v. Reetz</u>, No. 2013AP472, unpublished slip op., ¶7 (Wis. Ct. App. Oct. 24, 2013) ("[T]he parties dispute whether the circuit court correctly construed subsection (f) of the

9

marital settlement agreement, which, as we have stated, was incorporated into the judgment of divorce. The construction of a divorce judgment is a legal issue that we review independently of the circuit court. We apply the rules of contract construction to a divorce judgment, including where, as here, 'the divorce judgment is based on the parties' stipulation.'" (footnotes omitted; internal citations omitted)).

- <u>Waters v. Waters</u>, 2007 WI App 40, ¶¶2, 6, 300 Wis. 2d 224, 730 N.W.2d 655 (with respect to a "Final Stipulation-Marital Settlement Agreement," "[w]e apply the rules of contract construction to a divorce judgment . . . This is true even when the divorce judgment is based on the parties' stipulation . . . In divorce actions, stipulations are in the nature of a contract." (citations omitted)).

- <u>Hutjens v. Hutjens</u>, 2002 WI App 162, ¶¶2-24, 256 Wis. 2d 255, 647 N.W.2d 448 (applying principles of contract construction to an amended divorce judgment originally based on an MSA).

- <u>Henkel v. West</u>, No. 99-0724, unpublished slip op., ¶15 (Wis. Ct. App. Dec. 30, 1999) ("A marital settlement agreement or stipulation that is 'incorporated into a divorce judgment is in the nature of a contract.'" (citing <u>Rosplock</u>, 217 Wis. 2d at 30); "However, unlike with contract law, in a divorce, a trial court can modify certain terms of the agreement based on a 'substantial change in circumstances' despite the original intention of the parties." (citing Wis. Stat. § 767.32(1)(a))).

10

- Murray v. Murray, 231 Wis. 2d 71, 80, 604 N.W.2d 912 (Ct. App. 1999) (citing to an MSA favorably for its language that "[t]his agreement is a legally binding contract" before finding no substantial change in circumstances to modify support).

- Pinter v. Pinter, No. 95-2620-FT, unpublished slip op., *2 (Wis. Ct. App. May 7, 1996) (per curiam) (holding that an MSA incorporated into a divorce judgment was unambiguous in requiring the husband to keep the first wife as a beneficiary on the life insurance policy instead of the second wife; and "[a] judgment is interpreted in the same manner as other written documents." (citing Jacobson v. Jacobson, 177 Wis. 2d 539, 546, 502 N.W.2d 869 (Ct. App. 1993)).

- Kaplan v. Kaplan, No. 93-0478-FT, unpublished slip op., *1-2 (Wis. Ct. App. Jan. 5, 1994) (per curiam) (applying contract principles to the "interpretation of the parties' marital settlement agreement").

- Jacobson v. Jacobson, 177 Wis. 2d 539, 542, 546-47, 502 N.W.2d 869 (Ct. App. 1993) (addressing a stipulation of the parties in a divorce proceeding with respect to child support, insurance, property division, debts, and maintenance, ultimately incorporated into the judgment, and stating "[a] court interprets a judgment in the same manner as other written instruments . . . [w]hether the contract is ambiguous is a question of law . . . . Only when judgments are ambiguous is construction permitted[.]" (internal citations omitted)).

11

- Wilke v. Wilke, 212 Wis. 2d 271, 272-73, 569 N.W.2d 296 (Ct. App. 1997) (with respect to a "marital settlement agreement" approved by circuit court and incorporated into divorce judgment, which divided marital property: "This appeal addresses the effect a clause of mutual release contained in the marital property agreement executed by Scott and Judith as part of their judgment of divorce has on the restrictive stock agreement . . . . Insofar as both documents constitute contracts, their respective construction is a legal question reviewed independently[.]" (citation omitted)).

¶50 In accordance with Wisconsin cases, MSAs have been regarded as contracts by secondary sources:

- Jay E. Grenig & Nathan A. Fishbach, Wisconsin Practice Series: Methods of Practice Form 42-13 (5th ed. 2019) (referring to MSA as "a legally binding contract.").

- Gregg M. Herman & Kelley J. Shock, Family Law In Wisconsin: A Forms and Procedures Handbook Vol. 2 (9th ed. 2017) (distinguishing between an MSA, which is a contract and stipulations between the parties that are just an "understanding of what the parties desire[.]").

- Kelvin H. Dickinson, Divorce and Life Insurance: Post Mortem Remedies for Breach of a Duty to Maintain a Policy for a Designated Beneficiary, 61 Mo. L. Rev. 533, 551-52 (1996) ("Although many divorce agreements are essentially contracts, and, thus, governed by standard contract principles, divorce itself is still a matter regulated by statute and administered by courts." (emphasis added; internal footnotes omitted)).

12

- Adam W. Lasker, <u>Joint Parenting Agreement Allows Mother to Remove Children to California</u>, 100 Ill. B.J. 579 (2012) ("A JPA, <u>like a marital settlement agreement (MSA), is a contract</u> between the parties and, as such, a court's primary objective is to give effect to the intent of the parties, which must be determined only by the language of the agreement, absent an ambiguity[.]" (emphasis added; quoted source omitted)).

- Timothy Arcaro & Laura Miller Cancilla, <u>The Illusory Imputation of Income in Marital Settlement Agreements: "The Future Ain't What it Used to Be</u>," 35 Nova L. Rev. 157, 160, 173 (2010) ("[Florida] [c]ase law is unequivocal that MSAs are to be interpreted and enforced like other contracts." (citations omitted); also arguing that this conflicts with a trial court's obligation to ensure the best interests of the child and advocating that "principles of pure contract law cannot apply to the enforcement of an MSA that infringes upon a child's guaranteed right to support.").

- Lauren M. Ilvento, <u>The Application of Kinney System, Inc. v. Continental Ins. Co. to Modification of Child Custody Proceedings</u>, 83-May Fla. B.J. 41, 43 (2009) ("In the context of family law, <u>marital settlement agreements and mediated agreements are contracts</u> and are to be interpreted pursuant to the provisions of contract law." (emphasis added; citations omitted)).

- Sol Lovas, <u>When is a Family Not a Family? Inheritance and the Taxation of Inheritance Within the Non-Traditional Family</u>, 24 Idaho L. Rev. 353, 366 (1988) ("Separation

13

agreements are, of course, subject to the same attacks as all other contracts, such as fraud, duress, and lack of consideration. Marital settlement agreements may also be set aside if they are grossly inequitable or unfair, and they can be attacked for lack of reasonable and fair disclosure prior to execution." (internal footnotes omitted).

- Renee A. Rubino, <u>Marital Settlement Agreements – The Key to Life After Divorce</u>, 279-Dec N.J. Law 46, 46 (2012) ("To be clear, an MSA is an enforceable contract like any other contract. Although principles of equity are applied to ensure the MSA is fair and just, contract principles are utilized to ascertain the MSA's meaning and the intent of the parties." (citations omitted)).

- Reid T. Sherard, <u>Family Court Approval of a Marital Settlement Agreement Over One Party's Objection</u>, 26-Jan S.C. Law. 44 (2015) ("The term 'marital settlement agreement' is a term of art . . . such agreements are 'viewed as contracts' between the parties[.]" (quoted source omitted)).

¶51 Dictionaries as well as other sources also describe MSAs as contracts:

- <u>Marital Settlement Agreement</u>, Black's Law Dictionary (11th ed. 2019) ("See Divorce Agreement.") <u>Divorce Agreement</u>, Black's Law Dictionary (11th ed. 2019) ("A <u>contractual agreement</u> that sets out divorcing spouses' rights and responsibilities regarding property, alimony, custody, visitation, and child support. The divorce agreement usu. becomes incorporated by court order as a part of the divorce

14

decree and thus is enforceable by contempt, among other remedies. – Also termed agreement incident to divorce; <u>marital settlement agreement</u>; separation agreement." (emphasis added)).

- J. Robert J. Steigmann & Lori A. Nicholson, <u>Illinois Evidence Manual</u> § 12.6 (4th ed. 2019) ("Interpreting a marital settlement agreement is a matter of contract construction.").

- 17 Robert S. Hunter, <u>Illinois Practice Series: Estate Planning & Administration</u> § 27.5 (4th ed. 2019) ("The provisions of marital settlement agreements and of dissolution judgments which incorporate such agreements are interpreted under the same rules governing the construction of contracts.").

- 41 C.J.S. <u>Husband and Wife</u> § 95 (2020) ("A marital settlement agreement is a contract, which, when entered into before the dissolution of the marriage, is binding upon the parties." (internal footnotes omitted).).

¶52 This substantial body of law confirms the essential nature of MSAs: an agreement negotiated between two parties, with lawful consideration exchanged, constitutes a binding contract. <u>See Contract</u> Black's Law Dictionary (11th ed. 2019) (defining "contract" as "An agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law <a binding contract>."). A circuit court's review, approval and incorporation of the parties' agreement into the divorce judgment does not change the nature of the agreement. Nor should it mean that a court can alter the terms of the agreement unilaterally,

15

years after its execution, based merely on its incorporation into a divorce judgment.

¶53 The question in this case is not whether a divorce judgment strips an MSA of its contractual nature or even whether a divorce judgment should be interpreted as "a contract." The parties never presented or argued that question because that issue was not in dispute. Under black letter law, an MSA is a contract and its incorporation into a divorce judgment does not change that. Nor does incorporation into the divorce judgment mean that one of the parties can ask a court decades later to replace the legal remedy the parties chose at the time of the divorce with an equitable one. Courts do not create contracts, parties do; the courts' duty is to enforce them. See In re F.T.R., 2013 WI 66, ¶57, 349 Wis. 2d 84, 833 N.W.2d 634 ("The elements of a contract are offer, acceptance, and consideration." (citations omitted)); Restatement (Second) of Contracts § 1 (1981) ("A contract is a promise or set of promises . . . ."); 1 Richard A. Lord, Williston on Contracts § 1:1 (4th ed. 1990) ("[Contract law] is intended to enforce the expectancy interests created by the parties' promises[.]").

¶54 The Pulkkilas expressly identified and preserved their MSA as a contract. In the very first paragraph of the MSA, the parties "agree that the terms and provisions of the agreement may be incorporated by the court in the pending divorce action between the parties in the conclusions of law and judgment to be entered therein; however, this agreement shall independently survive any such judgment[.]" Section XVI of the MSA reiterates the

16

independent, contractual nature of the Pulkkilas' agreement: "this agreement shall survive any subsequent judgment of divorce and shall have independent legal significance. This agreement is a legally binding contract[.]" Instead of respecting the parties' contract and applying the Pulkkilas' chosen remedy, the majority sets aside the parties' negotiated contractual provisions in favor of reaching a different result because the lien remedy does not seem "fair." However, "[a] provision that seems to the court unjust or unfortunate (creating the so-called casus male inclusus) must nonetheless be given effect." Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). Even if the Pulkkilas' bargained-for remedy was not exclusive, a constructive trust is not an available alternative. "It is well established that . . . 'the mere failure to perform an agreement or to carry out a promise cannot in itself give rise to a constructive trust.'" In re Estate of Demos, 50 Wis. 2d 262, 269, 184 N.W.2d 117 (1971) (quoted source omitted).

II

A. MSAs are contracts.

¶55 The parties in this case never disputed that MSAs are contracts under the law. Joan Pulkkila referred to the MSA as a "contract" in her brief: "Lynnea fails to acknowledge that MSAs, unlike other contracts . . . " and "[t]hus, the fact that a remedy or any other provision in an MSA may have been bargained for as part of a contractual agreement between parties . . . ." (Emphasis added.) Indeed, Joan admitted to the circuit court that "this is a contractual situation." Similarly, the court of appeals

17

based its holding on the MSA being a contract. <u>Pulkkila v. Pulkkila</u>, No. 2018AP712-FT, unpublished slip op., ¶6 (Wis. Ct. App. Feb. 27, 2019) ("Importantly, the law of constructive trusts does not require a finding <u>that the contractual language</u> is ambiguous." (emphasis added)).

¶56 Although an MSA is subject to approval by the circuit court in order to prevent contracts violating public policy, once a court approves the MSA, those concerns disappear. The Pulkkilas' MSA did not violate public policy, the circuit court approved it, and the law deemed it a contract. <u>See</u> ¶¶48-52, <u>supra</u>. This court should have applied the law, respected the parties' bargain, and honored the contractual remedy the parties chose instead of offering an extra-contractual remedy grounded in equity and fairness.[2]

¶57 Recognizing that <u>In re Estate of Boyd</u> ("A stipulation in a divorce action is in the nature of a contract.")[3] could be read as inconsistent with <u>Miner</u> ("The [alimony] award was not contractual, but by adjudication and subject to modification"),[4] this court reconciled the two opinions. In <u>Vaccaro v. Vaccaro</u>, the court held not all stipulations in divorce proceedings are

---

[2] The circuit court appropriately recognized that it is not the circuit court's job "to go back and fix the parties' agreement to make it fair now for the children. It's not fair they're not getting as much money. They lost their father. It is a rotten deal for them. However, this Court has to follow the law on it."

[3] <u>In re Boyd's Estate</u>, 18 Wis. 2d 379, 381, 118 N.W.2d 705 (1963).

[4] <u>Miner v. Miner</u>, 10 Wis. 2d 438, 442-44, 103 N.W.2d 4 (1960), <u>abrogated on other grounds by</u> <u>Rohde-Giovanni v. Baumgart</u>, 2004 WI 27, 269 Wis. 2d 598, 676 N.W.2d 452.

18

contracts, but that "contractual obligations arise only in situations where the court expressly refers to and approves a formal agreement between the parties, and not where, as [in Vaccaro], the court merely adopts and to some extent modifies the parties' joint recommendations as to alimony, support or property settlement." 67 Wis. 2d 477, 486, 227 N.W.2d 62 (1975) (emphasis added); see also Kelvin H. Dickinson, Divorce and Life Insurance: Post Mortem Remedies for Breach of a Duty to Maintain a Policy for a Designated Beneficiary, 61 Mo. L. Rev. 533, 551-52 (1996) (conceding that "many divorce agreements are essentially contracts, and, thus, governed by standard contract principles" while citing to the quote above from Vacarro (emphasis added)).

¶58 This court's recent opinions discussed the importance of the right of divorcing parties to contract through MSAs, and applied contract principles to these agreements. In May v. May, the court confronted a child support stipulation in the parties' MSA, which the divorce judgment incorporated. 2012 WI 35, ¶4, 339 Wis. 2d 626, 813 N.W.2d 179. The court stated, "we are sensitive to the importance and prevalence of stipulations in helping families going through difficult and litigious divorces and curbing disagreements [between] the parties. The ability to contract is fundamental to our legal system and may aid parties in settling their divorces more amicably." Id., ¶18 (emphasis added) (quoting Frisch v. Henrichs, 2007 WI 102, ¶75, 304 Wis. 2d 1, 736 N.W.2d 85). In this case, the majority fails to honor divorcing parties' fundamental freedom to contract, depriving them (and

19

their children) of any finality in their financial and relational matters.

¶59 In a case preceding May, this court applied contract principles to "interpret[]" an MSA incorporated into a divorce judgment. See Topolski v. Topolski, 2011 WI 59, ¶1, 335 Wis. 2d 327, 802 N.W.2d 482. The Topolski court stated it was putting the parties in the "same position they would have been in" but for the occurrence of an event, and giving the parties "exactly what they bargained for in the Marital Settlement Agreement[.]" Id., ¶7. These are settled pillars of contract law. See Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 404, 573 N.W.2d 842 (1998) ("The law of contracts is designed . . . to protect the expectancy interests of parties to private bargained-for agreements. Contract law, therefore, seeks to . . . ensur[e] that each party receives the benefit of their bargain." (citations omitted)). The Topolski court, citing to contract cases, adopted as the standard of review "well-established" "principles that govern [the] interpretation of written documents[.]" Topolski, 335 Wis. 2d 327, ¶¶28-32 n.10. The court proceeded to analyze the text of the MSA, giving it "its plain and ordinary meaning" to ascertain the parties' intent. Id., ¶49.

¶60 I would apply longstanding, controlling authority and treat the MSA between Joan and James Pulkkila as the contract it is. The analysis then turns to whether there is any legal basis to set aside the contract as a whole or its life insurance provision in particular. There is none.

20

B. The divorce judgment did not nullify or alter the MSA.

¶61 There are multiple reasons courts nullify or modify contracts——including rescission, mistake, fraud, duress, etc. See Williston §§ 18, 68-77. None of these were raised by either party and none apply in the Pulkkilas' case. At the time the terms of the Pulkkilas' divorce were finalized, the circuit court approved and incorporated the MSA into the divorce judgment, without disapproving or amending the provisions in Section V of the MSA,[5] which required the parties to maintain life insurance with their minor children as beneficiaries and specified the remedy in case of a breach. Because the life insurance provision was not nullified or amended by the divorce judgment's incorporation of the agreement, the divorce judgment did not change the contractual nature of the MSA. See, e.g., Topolski, 355 Wis. 2d 327, ¶¶28-49; Dickau, 344 Wis. 2d 308, ¶14 ("We apply the rules of contract construction to a divorce judgment[.]" (citation omitted)).

C. The remedy provision of the MSA controls.

¶62 "If there is one thing which more than another public policy requires it is that [individuals] of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice." Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical

---

[5] The circuit court did make several amendments to the MSA following the trial, but these related to payment of utilities, anger management counseling, child support from gross monthly income, payment of debt, pension benefit award, cash value of insurance policies, and a holiday schedule.

21

Assocs., LLC, 2018 WI 112, ¶39, 384 Wis. 2d 669, 920 N.W.2d 767 (quoting Merten v. Nathan, 108 Wis. 2d 205, 212 n.5, 321 N.W.2d 173 (1982)). Wisconsin law is replete with affirmations of the parties' freedom to contract, including the freedom to specify determinate remedies. See, e.g., Ash Park, LLC v. Alexander & Bishop Ltd., 2010 WI 44, ¶37, 324 Wis. 2d 703, 783 N.W.2d 294 ("When a contract specifies remedies available for breach of contract, the intention of the parties generally governs.").

¶63 Because the MSA is a contract, prevailing principles of contract interpretation apply. "[W]e interpret the plain language of a contract 'consistent with what a reasonable person would understand the words to mean under the circumstances." Marx v. Morris, 2019 WI 34, ¶63, 386 Wis. 2d 122, 925 N.W.2d 112 (quoting Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶22, 326 Wis. 2d 300, 786 N.W.2d 15. "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." Gorton v. Hostak, Henzl & Bichler, S.C., 217 Wis. 2d 493, 506, 577 N.W.2d 617 (1998) (citation omitted). "[U]nambiguous contract language controls contract interpretation." Kernz v. J.L. French Corp., 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751.

¶64 Section V of the Pulkkila MSA contains the two provisions material to this appeal:

> A. Both parties shall maintain in full force and pay the premiums on all life insurance presently in existence on their lives or obtain comparable insurance coverage, with the parties' minor children names as sole and irrevocable primary beneficiaries until the youngest minor child reaches the age of majority, or until the child has reached the age of 19 . . .

22

. . . .

D. If either party <u>fails for any reason</u> to maintain any of the insurance required under this article, there <u>shall be a valid and provable lien against his or her estate</u> in favor of the specified beneficiary to the extent of the difference between the insurance required and the actual death benefits received.

(Emphasis added.) Section V, article A of the MSA unambiguously required both Joan and James Pulkkila to maintain life insurance with the children as beneficiaries, until the children become a certain age. The parties do not dispute the obligatory requirement of this provision or suggest an alternate meaning.

¶65 The parties' dispute centers on the remedy for failing to adhere to the life insurance obligation set forth in section V, article A. The majority holds the remedy for breach of that obligation——a lien against the estate——is not the exclusive remedy. <u>See</u> Majority op. ¶27. The majority cites no language in the MSA or divorce judgment, nor any amendment to either, changing the specific remedy the Pulkkilas chose for breach of the life insurance provision, but instead decides the lack of limiting language indicates that the specified lien is not the "only remedy for such a breach" and the mandatory "shall" in this provision does not mean the lien remedy is exclusive. Majority op., ¶¶23-24. I disagree.

¶66 MSA section V, article D states that the remedy for breach of the obligation set forth in article A to maintain insurance with the children as primary beneficiaries "shall be a . . . lien" against the estate of the party who violates article A. The remedy applies if a party breaches this obligation "for any reason." The word "shall" in written legal texts generally

23

imposes a mandatory obligation, rather than a discretionary one. See Village of Elm Grove v. Brefka, 2013 WI 54, ¶23, 348 Wis. 2d 282, 832 N.W.2d 121 (discussing that we "ordinarily presume[]" that "shall" is mandatory); Scalia & Garner, Reading Law 112 ("Mandatory words impose a duty . . . shall is mandatory."). Reading "shall" as imposing a mandatory remedy accords with the agreement of the parties to maintain life insurance policies naming their children as primary beneficiaries. Nothing in the text of the MSA or the divorce judgment suggests the Pulkkilas agreed to (or the circuit court ordered) anything different.

¶67 The only remedy listed in article D specifically, the MSA as a whole, or the divorce judgment, for breach of the obligation to maintain life insurance with the minor children as sole beneficiaries is a "lien against [the violator's] estate in favor of the specified beneficiary to the extent of the difference between the insurance required and the actual death benefits received." Under longstanding Wisconsin law, the express mention of one option in a legal instrument forecloses the availability of other options. See Goebel v. First Fed. Sav. & Loan Ass'n of Racine, 83 Wis. 2d 668, 673, 266 N.W.2d 352 (1978); Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, 2018 WI 19, ¶95, 380 Wis. 2d 60, 908 N.W.2d 797 (Rebecca Grassl Bradley, J., dissenting) ("Under [the] principle [of expressio unius est exclusio alterius], a specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned[.]" (quoting Goebel, 83

24

Wis. 2d at 673). Under this canon of construction, the expression of the lien remedy in article D of the MSA excludes all other remedies for failing to maintain life insurance with the children as sole beneficiaries——including a constructive trust.

¶68 The MSA's life insurance provisions are plain and unambiguous, and therefore govern the disposition in this case. The lien remedy the parties elected in Section V of the MSA is both mandatory and exclusive upon either party's failure "for any reason" to maintain life insurance naming the minor children as sole beneficiaries. Equitable relief, such as a constructive trust, is not available. A constructive trust was "created by law to prevent unjust enrichment[.]" Wilharms v. Wilharms, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980). However, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." Greenlee v. Rainbow Auction/Realty Co., Inc., 202 Wis. 2d 653, 671, 553 N.W.2d 257 (Ct. App. 1996) (citation omitted); In re Demos' Estate, 50 Wis. 2d 262, 269, 184 N.W.2d 117 (1971) ("the mere failure to perform an agreement or to carry out a promise cannot in itself give rise to a constructive trust"); Guaranteed Inv. Co. v. St. Croix Consol. Copper, 156 Wis. 173, 175, 145 N.W. 662 (1914)(holding that a claim in equity "cannot be sustained" where there is an "adequate remedy at law").

¶69 Finally, the majority does not grapple with its failure to give effect to the parties' chosen remedy language, depriving it of any operative effect whatsoever and leaving it mere surplusage. Specifying a mandatory lien remedy is completely

25

pointless if a court is free to impose a different remedy.[6] By rewriting the parties' MSA and allowing a remedy other than the one the MSA provides, the majority violates the canon against surplusage. See Ash Park, LLC v. Alexander & Bishop, Ltd., 2015 WI 65, ¶37, 363 Wis. 2d 699, 866 N.W.2d 679; Heritage Mut. Ins. Co. v. Truck Insurance-Exchange, 184 Wis. 2d 247, 258, 516 N.W.2d 8 (Ct. App. 1994) (recognizing that the surplusage rule applies when interpreting contracts) ("[T]he general rule of construction is that an interpretation of an agreement which gives reasonable meaning to all provisions is preferable to one which leaves part of the language useless or inexplicable or creates surplusage."). "If possible . . . every provision is to be given effect (verba cum effectu sunt accipienda). None should be ignored. None should needlessly be given an interpretation that causes it . . . to have no consequence." Scalia & Garner, Reading Law at 174 (footnote omitted). The majority's treatment of the life insurance provision needlessly writes the mandatory remedy chosen by the parties out of the agreement altogether, violating the surplusage canon, which "holds that it is no more the court's function to revise by subtraction than by addition." Id. The most frequent circumstance this canon prevents is "an interpretation that renders [a provision] pointless." Id. at 176. The canon applies to contracts like MSAs: "This court must be

---

[6] Dissenting from the court of appeals decision, then-Judge Brian Hagedorn recognized that "the MSA's mandatory lien language does not make much sense if other remedies could be pursued instead of a lien." Pulkkila v. Pulkkila, No. 2018AP712-FT, unpublished slip op., ¶15 (Wis. Ct. App. Feb. 27, 2019) (Hagedorn, J., dissenting).

26

guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless." Id., (quoting Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985)). In construing contracts, "courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage." Goebel, 83 Wis. 2d at 680.

¶70 Nothing the majority proffers can justify contravening the parties' contract. Modifying the parties' chosen remedy also conflicts with Wisconsin statutory law. Life insurance is an asset under Wis. Stat. § 767.217(1) and is subject to property division that is unmodifiable post-judgment, under § 767.59(1c)(b): "A court may not revise or modify . . . a judgment or order with respect to final division of property." Because the life insurance provision addresses a marital property asset, the circuit court is statutorily prohibited from modifying its remedy clause by imposing a constructive trust. See also Winkler v. Winkler, 2005 WI App 100, ¶15, 282 Wis. 2d 746, 699 N.W.2d 652 (citing Krieman v. Goldberg, 214 Wis. 2d 163, 173, 571 N.W.2d 425 (Ct. App. 1997)) ("[A] final division of property is fixed for all time and is not subject to modification."). The life insurance provision is not modifiable and any "unfair" terms could have and should have been rejected or amended before the divorce judgment was entered.

III

¶71 The MSA is a contract and the divorce judgment did nothing to alter its contractual nature. The court approved it at

27

the time it entered the judgment of divorce and this court should enforce it in accordance with its terms. The Pulkkilas elected a particular legal remedy for James Pulkkila's breach and expressed it unequivocally in their MSA; this court should apply it. I would reverse the court of appeals decision and hold the exclusive remedy is a lien against James' estate, consistent with the unambiguous words of the parties' MSA. I would reinstate the decision of the circuit court. Because the majority disregards controlling cases and statutes in order to confer unprecedented powers on the judiciary to rewrite marital settlement agreements, thereby infringing the individual freedom to contract, I respectfully dissent.